**14-55093, 14-55120, 14-55121, 14-55122, 14-55125, 14-55128 & 14-55140**

*in the*

# United States Court of Appeals for the Ninth Circuit

———————————

MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated; et al.,

*Plaintiffs-Appellees,*

and

COUNTRYWIDE FINANCIAL CORPORATION, et al.,

*Defendants-Appellees*,

-against-

FIRST NATIONAL BANK & TRUST OF ROCHELLE AND LL FUNDS, LLC,

*Objector-Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
CIVIL ACTION NOS. 10-302, 12-5122, 12-5125

———————————

## COUNTRYWIDE DEFENDANTS-APPELLEES' BRIEF

Brian E. Pastuszenski
Alexis L. Shapiro
Brian C. Devine
GOODWIN PROCTER LLP
53 State St.
Boston, Massachusetts 02109
(617) 570-1000

William M. Jay
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, DC 20001
(202) 346-4000

Counsel for Appellees Countrywide Financial Corp., Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., CWABS, Inc., CWHEQ, Inc., Countrywide Capital Markets, Countrywide Securities Corporation

*[see inside cover pages for full caption]*

**14-55093, 14-55120, 14-55121, 14-55122, 14-55125, 14-55128 & 14-55140**

*in the*

# United States Court of Appeals for the Ninth Circuit

―――――――――――――

MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated; DAVID H. LUTHER; WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND,

*Plaintiff-Appellee,*

and

COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; CWALT, INC.; CWMBS, INC.; CWHEQ, INC.; COUNTRYWIDE CAPITAL MARKETS; COUNTRYWIDE SECURITIES CORPORATION; DEUTSCHE BANK SECURITIES INC.; USB SECURITIES, LLC; HSBC SECURITIES (USA) INC., AKA HSBC SECURITIES (USA); RBS SECURITIES, INC., FKA GREENWICH CAPITAL MARKETS, INC.; BANK OF AMERICA CORPORATION; NB HOLDINGS CORPORATION; STANFORD L. KURLAND; DAVID A. SPECTOR; ERIC P. SIERACKI; DAVID A. SAMBOL,

*Defendants-Appellees,*

-against-

FIRST NATIONAL BANK & TRUST OF ROCHELLE AND LL FUNDS, LLC,

*Objector-Appellant.*

―――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
CIVIL ACTION NOS. 10-302, 12-5122, 12-5125

―――――――――――――

**COUNTRYWIDE DEFENDANTS-APPELLEES' BRIEF**

Brian E. Pastuszenski
Alexis L. Shapiro
Brian C. Devine
GOODWIN PROCTER LLP
53 State St.
Boston, Massachusetts 02109
(617) 570-1000

William M. Jay
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, DC 20001
(202) 346-4000

Counsel for Appellees Countrywide Financial Corp., Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., CWABS, Inc., CWHEQ, Inc., Countrywide Capital Markets, Countrywide Securities Corporation

*[captions of consolidated cases omitted]*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Countrywide Home Loans, Inc., Countrywide Capital Markets, CWALT, Inc., CWMBS, Inc., CWABS, Inc., and CWHEQ, Inc. are subsidiaries of Countrywide Financial Corporation. Countrywide Securities Corporation is a subsidiary of Countrywide Capital Markets. Bank of America Corporation ("Bank of America") is the ultimate parent to all of Countrywide Financial Corporation, Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., CWABS, Inc., CWHEQ, Inc., Countrywide Capital Markets, Countrywide Securities Corporation, and their parent companies. Bank of America is a publicly held corporation whose shares are traded on the New York Stock Exchange. It has no parent corporation, and no publicly-held corporation owns more than 10 percent of Bank of America's shares.

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

CORPORATE DISCLOSURE STATEMENT ..........................................i

TABLE OF AUTHORITIES ...................................................iv

ISSUES PRESENTED........................................................1

STATEMENT OF THE CASE..................................................1

SUMMARY OF ARGUMENT .................................................2

STANDARD OF REVIEW ...................................................5

ARGUMENT ...............................................................7

I.   THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN
     FINDING ADEQUACY AND TYPICALITY UNDER RULE 23...............7

     A.   The District Court Did Not Abuse Its Discretion In Determining That
          Subclasses Were Unnecessary. ...........................................9

          1.   Neither *Amchem* Nor *Ortiz* Requires Subclasses........................9

          2.   The District Court's Adequacy Determination Was Not An
               Abuse Of Discretion................................................12

          3.   Both Structural Assurances Of Adequate Representation And
               Practical Considerations Support The District Court's Ruling...15

     B.   The District Court's Standing Rulings And Its Adequacy And
          Typicality Determinations Are Not "Irreconcilable."........................20

II.  THE DISTRICT COURT APPROPRIATELY EXERCISED ITS BROAD
     DISCRETION IN FINDING THE SETTLEMENT AND PLAN OF
     ALLOCATION FAIR AND REASONABLE. ...........................................25

     A.   The District Court's Consideration Of The Settlement's Fairness and
          Reasonableness Was Painstakingly Thorough And Thoughtful.........26

     B.   The District Appropriately Exercised Its Broad Discretion In Finding
          The Total Settlement Amount Fair And Reasonable. .........................29

III.   ALTHOUGH WELL GROUNDED, THE CORRECTNESS OF THE
       DISTRICT COURT'S MERITS RULINGS IS NOT AT ISSUE.................34

       A.   The Standing Rulings Were Legally Well-Grounded..........................36

            1.   Offering-Level Standing. ............................................................37

            2.   Tranche-Level Standing.............................................................42

       B.   The Tolling Rulings Were Legally Well-Grounded. ..........................44

            1.   *American Pipe* Does Not Apply To State Court Class Actions..44

            2.   *American Pipe* Does Not Apply To Statutes of Repose. ............47

            3.   Lack of Standing Forecloses *American Pipe* Tolling. ................48

IV.    THE DISTRICT COURT APPROPRIATELY EXERCISED ITS
       DISCRETION IN REJECTING OBJECTORS' CHALLENGE TO THE
       SETTLEMENT RELEASE. ...........................................................................52

       A.   Potential Claims Against Ratings Agencies Are Properly Released. .53

       B.   The Settlement Properly Releases Claims Against Trustees. .............56

CONCLUSION .....................................................................................................57

STATEMENT WITH RESPECT TO ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

STATEMENT OF RELATED CASES

COUNTRYWIDE DEFENDANTS-APPELLEES' ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Line Stewards & Stewardesses Ass'n, Local 550 v. TWA, Inc.*,
630 F.2d 1164 (7th Cir. 1980) ...............................................23, 24, 25

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................................................................*passim*

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974)....................................................................*passim*

*Anderson v. Nextel Retail Stores, LLC*,
2010 WL 8591002 (C.D. Cal. April 12, 2010)...................................53

*Ault v. Walt Disney World Co.*,
692 F.3d 1212 (11th Cir. 2012) ...........................................................8

*Boilermakers Nat'l Annuity Trust Fund v. WAMU Mortg. Pass Through Certificates, Series AR1*,
748 F. Supp. 2d 1246 (W.D. Wash. 2010) .......................................51

*Catholic Social Svcs. v. INS*,
232 F.3d 1139 (9th Cir. 2000) ..........................................................51

*Chardon v. Fumero Soto*,
462 U.S. 650 (1983).........................................................................46

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
2012 WL 426267 (D.N.J. Feb. 7, 2012) ...........................................46

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ....................................................29, 35

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ..........................................................45

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983).....................................................................45, 50

iv

*CTS Corp. v. Waldburger,*
573 U.S. __ (2014) ............................................................................48

*Cullen v. Margiotta,*
811 F.2d 698 (2d Cir. 1987) ...........................................................47

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006) ........................................................................39

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) ..............................................................9

*Emp'rs-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor
Capital Advisors,*
498 F.3d 920 (9th Cir. 2007) ..........................................................18

*FDIC as Receiver for Guaranty Bank v. Countrywide Sec. Corp.,*
966 F. Supp. 2d 1018 (C.D. Cal. 2013) ...........................................29

*FDIC as Receiver for Sec. Sav. Bank v. Banc of Am. Sec. LLC,*
934 F. Supp. 2d 1219 (C.D. Cal. 2013) ...........................................44

*FDIC as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.,*
2012 WL 5900973 (C.D. Cal. Nov. 21, 2012) ...........................*passim*

*Fla. Trailer & Equip. Co. v. Deal,*
284 F.2d 567 (5th Cir. 1960) ..........................................................35

*Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.,*
770 F. Supp. 2d 618 (S.D.N.Y. 2011) .............................................47

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) ........................................................................23

*Griffin v. Singletary,*
17 F.3d 356 (11th Cir. 1994) ..........................................................51

*Haas v. Pittsburgh Nat'l Bank,*
526 F.2d 1083 (3d Cir. 1975) .........................................................51

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ...............................................6, 14, 25

v

*Hertzberg v. Dignity Partners*,
191 F.3d 1076 (9th Cir. 1999) .............................................................38

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
818 F.2d 145 (3d Cir. 1987) ................................................................34

*In re Colonial Ltd. P'ship*,
854 F. Supp. 64 (D. Conn. 1994)..........................................................51

*In re Copper Antitrust Litig.*,
436 F.3d 782 (7th Cir. 2006) ...............................................................45

*In re Countrywide Fin. Corp. Deriv. Litg.,*
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ...............................................33

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) .........................................................9, 13

*In re Direxion Shares ETF Trust*,
279 F.R.D. 221 (S.D.N.Y. 2012) .........................................................51

*In re Elscint, Ltd. Sec. Litig.*,
674 F. Supp. 374 (D. Mass. 1987)........................................................51

*In re FPI/Agretech Sec. Litig.*,
105 F.3d 469 (9th Cir. 1997) .................................................................6

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) ................................................................14

*In re Lehman Bros. Sec. & ERISA Litig.*,
800 F. Supp. 2d 477 (S.D.N.Y. 2011) ..................................................47

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) ..........................................................14, 15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................*passim*

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010) ................................................................14

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ............................................................25

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2012 WL 3155693 (N.D. Cal. Aug. 2, 2012) ....................................51

*In re Veritas Software Corp. Sec. Litig.*,
496 F.3d 962 (9th Cir. 2007) ................................................................6

*In re Wash. Mut. MBS Litig.*,
276 F.R.D. 658 (W.D. Wash. 2011) ....................................................42

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
712 F. Supp. 2d 958 (N.D. Cal. 2010) ................................................38

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) ....................................51

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) .........................................................22

*Kruse v. Wells Fargo Home Mortg., Inc.*,
2006 WL 1212512 (E.D.N.Y. May 3, 2006) ......................................51

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) ............................................................40

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................................5

*Lewis v. Casey*,
518 U.S. 343 (1996)..............................................................................39

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ............................................................40

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ..............................................................5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................38

*Machesny v. Ramsgate Ins., Inc.*,
  2014 WL 2605479 (E.D. Mich. June 10, 2014) ................................................46

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977) ............................................................19

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
  863 F. Supp. 2d 928 (N.D. Cal. 2012)................................................55

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010)............................................49, 51

*N.J. Carpenters Health Fund v. Residential Capital*,
  LLC, 272 F.R.D. 160 (S.D.N.Y. 2011) ............................................................22

*NCUA v. Morgan Stanley & Co., Inc.*,
  2013 WL 6842596 (D. Kan. Dec. 27, 2013) ....................................................46

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) ...................................................... *passim*

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)........................................................................39

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ...........................................................6, 7, 33, 34

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)........................................................................*passim*

*Palmer v. Stassinos*,
  236 F.R.D. 460 (N.D. Cal. 2006)........................................................49, 51

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ...................................................11, 13

*Pickett v. Holland Am. Line-Westours, Inc.*,
  35 P.3d 351 (Wash. 2001) ............................................................36

*Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*,
  2012 WL 601448 (E.D.N.Y. Feb. 23, 2012) ....................................................42

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
632 F.3d 762 (1st Cir. 2011).................................................................37

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013) ..............................................................47

*Putnam Bank v. Countrywide Fin. Corp.*,
860 F. Supp. 2d 1062 (C.D. Cal. 2012)............................................28, 49, 50, 51

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ...........................................................52, 54, 55

*Ricaldai v. US Investigations Servs.*,
2013 WL 4804733 (C.D. Cal. Sept. 6, 2013) .......................................53

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ..........................................................8, 22

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...........................................................6

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
642 F.3d 560 (7th Cir. 2011) ...........................................................46

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ..........................................................34

*Skilstaf, Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012) ..........................................................53, 56

*Staton v. Boeing*,
327 F.3d 938 (9th Cir. 2003) ...........................................................6

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ..............................................28

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ............................................................24

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ............................................................12, 17, 52

*Wade v. Danek Med., Inc.*,
  182 F.3d 281 (4th Cir. 1999) ...............................................................45

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)........................................................................23

*Walters v. Edgar*,
  163 F.3d 430 (7th Cir. 1998) .......................................................49, 51

*Warth v. Seldin*,
  422 U.S. 490 (1975)......................................................................38, 39

*Williams v. Rohm and Haas Pension Plan*,
  2010 WL 1490350 (S.D. Ind. Apr. 12, 2010)......................................17

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) .......................................................13, 35

## STATUTES

Securities Act of 1933......................................................................*passim*

  § 11(a), 15 U.S.C. § 77k(a) ................................................................38

  § 12(a), 15 U.S.C. § 77*l*(a) ................................................................38

  § 13, 15 U.S.C. § 77m........................................................................47

  § 27(a), 15 U.S.C. § 77z-1(a)...........................................................18

## RULES AND REGULATIONS

17 C.F.R. § 229.512(a)(2) ....................................................................38

Fed. R. Civ. P. 23 ..........................................................................*passim*

## JURISDICTIONAL STATEMENT

Defendants-Appellees Countrywide Financial Corp., Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., CWABS, Inc., CWHEQ, Inc., Countrywide Capital Markets, and Countrywide Securities Corporation ("Countrywide Defendants-Appellees") adopt Plaintiffs-Appellees' jurisdictional statement.

## ISSUES PRESENTED

1.      Whether the District Court acted within its discretion in finding Named Plaintiffs adequate representatives under Fed. R. Civ. P. 23(a) and their claims typical.

2.      Whether the District Court acted within its discretion in finding the $500 million Settlement and Plan of Allocation fair, reasonable, and adequate under Rule 23(e).

3.      Whether the District Court acted within its discretion in rejecting certain Objectors' challenge to the settlement release.

## STATEMENT OF THE CASE

Countrywide Defendants-Appellees adopt Plaintiffs-Appellees' statement of the case for purposes of this appeal.

## SUMMARY OF ARGUMENT

**I.**     Under longstanding Ninth Circuit precedent, the District Court had

broad discretion in assessing the Named Plaintiffs' adequacy and typicality under

Rule 23(a), and its determinations as to these issues were reasonable exercises of

that discretion.  Objectors[1] argue that the District Court's rulings as to the

requirements for standing in MBS securities cases, and concerning tolling and

timeliness of MBS claims, created a conflict of interest between Named Plaintiffs

(who did have standing under those rulings as to certain claims) and Category

Three Class Members (whose claims were subject to dismissal for lack of standing

and/or timeliness and who thus receive less under the Plan of Allocation than

Category One or Two Class Members).  But this Court repeatedly has held that

district courts may approve a settlement providing for differential allocation of

settlement proceeds among class members—*without* the need for separately-

represented subclasses as Objectors demand—as long as there is a rational basis

for the differing treatment.

Here, there indisputably was a rational basis for the differential treatment

among the three categories of Class Members because (as the District Court found)

Category Three claims have significantly less value and would be subject to

---

[1] Objectors include:  (1) certain collateralized debt obligation entities ("CDO
Objectors"); (2) FDIC as receiver for certain banks; and (3) First National Bank &
Trust of Rochelle and LL Funds, LLC ("FNBR Objectors").

significantly greater litigation risks and uncertainties than Category One or Two

claims.  The reasonableness of the District Court's exercise of discretion is further

confirmed both by structural assurances of adequate representation, including the

involvement of a retired federal judge in formulating the Plan of Allocation, and by

practical considerations, including Class Members' right to opt out and the

substantial risk that the Class—and particularly Category Three Class Members—

would receive nothing were this Settlement not approved.

Objectors' argument that the District Court's adequacy and typicality

determinations were incompatible with its standing rulings improperly conflates

the standards for class certification under Rule 23 with standing requirements.  The

District Court's determination that Named Plaintiffs' claims are reasonably

coextensive with those of absent Class Members (due to their common allegation

that the offering documents for each and every MBS concealed that Countrywide

allegedly had abandoned its underwriting guidelines for all the loans it originated)

is consistent with this Court's standards for Rule 23 typicality.  And the District

Court's standing rulings are in no way inconsistent with its conclusion that all

Class Members' claims fundamentally alleged the same overarching conduct.

Moreover, Objectors nowhere contend that Named Plaintiffs lacked standing as to

*any* of the claims they asserted (in fact, they contend just the opposite—that

Named Plaintiffs had standing as to *all* claims).  And if Named Plaintiffs were

adequate and typical enough to appeal the standing rulings (as Objectors contend they should have done instead of settling), then they were necessarily adequate and typical enough to enter into a classwide settlement that resolved the significant risks and uncertainties of any recovery for the Class.

**II.**     The District Court's determination that the Settlement and the Plan of Allocation are fair and reasonable was a reasonable exercise of its broad discretion. The District Court's process for evaluating the Settlement was painstakingly thorough and thoughtful, including multiple hearings and supplemental briefing on the fairness of the Plan of Allocation before granting even preliminary approval. And the District Court reasonably determined that the significant litigation risks and uncertainties of recovery for Class Members (particularly those in Category Three) given the standing, timeliness and other challenges they faced, together with the absolute size of this massive, half-a-billion-dollar Settlement, supported approval of the Settlement and the Plan of Allocation.

**III.**    The correctness of the District Court's merits rulings on standing, tolling, and timeliness is not at issue in this appeal, and Objectors' criticism of those rulings is misplaced. Rather, the question on appeal is whether the District Court acted within its broad discretion in determining that the Settlement and the Plan of Allocation are fair and reasonable, taking into account the significant litigation risks and uncertain recovery faced by Class Members (particularly those

-4-

in Category Three) resulting from those rulings. It cannot reasonably be disputed that the District Court appropriately considered those risks and uncertainties in assessing fairness, and although the correctness of those rulings is not at issue, each ruling is in line with those of other courts that have considered the same unsettled legal issues.

IV.     The attack by certain Objectors on the scope of the Settlement release is specious. Contrary to Objectors' arguments, this Court has held that class action settlements may release claims against non-parties, and the disputed features of the release here are similar to those that have been approved by numerous courts.

## STANDARD OF REVIEW

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Thus, appellate review of approval of class action settlements is "extremely limited," and approval will be disturbed "only upon a *strong* showing that the district court's decision was a *clear* abuse of discretion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).[2] This same standard applies to each aspect of approval, including the district court's certification of the settlement class, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213

---

[2] Throughout this brief, emphasis is added and internal quotation marks and citations omitted unless otherwise noted.

F.3d 454, 461 (9th Cir. 2000), its determinations of typicality and adequacy of

representation, *e.g.*, *Staton v. Boeing*, 327 F.3d 938, 957-61 (9th Cir. 2003), and its

approval of a plan of allocation, *e.g.*, *Mego*, 213 F.3d at 460; *In re Veritas Software*

*Corp. Sec. Litig*., 496 F.3d 962, 968 (9th Cir. 2007).

Under this abuse of discretion standard, a district court's approval order will

not be set aside unless it "is based on an erroneous conclusion of law or if the

record contains no evidence on which it rationally could have based its decision."

*In re FPI/Agretech Sec. Litig*., 105 F.3d 469, 472 (9th Cir. 1997). Further, an

appellate court will not substitute its concepts of fairness for those of the district

judge. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir.

1982), *cert. denied*, 459 U.S. 1217 (1983). This is because the district court need

only determine that a proposed settlement falls within a range of reasonableness,

not that it is the most favorable possible outcome of the litigation. *Rodriguez v.*

*West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). And "[i]t is the settlement

taken as a whole, rather than the individual component parts, that must be

examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

(9th Cir. 1998).

Although the CDO Objectors assert that the District Court's standing and

tolling rulings "are issues of law and are reviewed *de novo*," CDO Br. 22, in fact

these rulings (made years before the Settlement) are not subject to review in

connection with this Settlement.  As this Court has held, "[n]either the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Officers for Justice*, 688 F.2d at 625.

## ARGUMENT

## I. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN FINDING ADEQUACY AND TYPICALITY UNDER RULE 23.

Since the filing of the initial *Luther* complaint in 2007, Named Plaintiffs have argued consistently that they had standing to assert claims on behalf of all Class Members (including those in Category Three) because during the relevant period each MBS offering document allegedly misstated how the underlying Countrywide loans had been originated, and all Class Members shared the same interest in establishing those misstatements, regardless of which specific MBS they bought.  The District Court found the Named Plaintiffs' claims typical because "like the other class members, [they] purchased or otherwise acquired certificates issued in connection with the same offering documents" and thus "share a common argument that these offering documents contain misrepresentations regarding

Countrywide's underwriting practices." ER31.[3]  The District Court further found Named Plaintiffs and their counsel to be adequate representatives, holding that "it is beyond serious dispute that Class Counsel has vigorously prosecuted the Settlement Actions on both the state and federal level over the last six years." ER32.  Objectors challenge these findings, arguing that the allocation of the settlement proceeds—based on the relative strengths and weaknesses of each category of claims—renders Category Three claims atypical and Named Plaintiffs and their counsel inadequate.  *See* FNBR Br. 20; CDO Br. 24-29.  Objectors are wrong.

This Court has held that the "typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).[4]  In this Circuit, the adequacy requirement is met if named plaintiffs and their counsel (1) have no fundamental conflicts with other class members and (2) will prosecute the action vigorously on behalf of the class.  *Mego*, 213 F.3d at 462.  "A conflict or potential

---

[3] "ER__" denotes Excerpts of Record filed by the CDO Objectors; "RE__" denotes Excerpts of Record filed by the FNBR Objectors; and "SER__" denotes Supplemental Excerpts of Record filed by the Countrywide Defendants-Appellees.

[4] *Accord Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) ("While each class member may have a stronger or weaker claim ... we conclude that this alone does not make class representatives' claims atypical of the class as a whole.").

conflict alone will not ... necessarily defeat class certification—the conflict must be fundamental." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).[5]

Here, the District Court's determinations as to both typicality and adequacy are well supported by its assessment of the litigation risks facing the different categories of Class Members, the structural assurances of adequate representation associated with the Settlement and Plan of Allocation, and "practical considerations" that this Court has held should be evaluated in assessing adequacy. *Mego*, 213 F.3d at 463.

**A.** **The District Court Did Not Abuse Its Discretion In Determining That Subclasses Were Unnecessary.**

**1.** **Neither *Amchem* Nor *Ortiz* Requires Subclasses.**

Objectors argue that the differential treatment of class members based on the respective strengths and weaknesses of their claims mandates subclasses. *See* CDO Br. 33 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)); FNBR Br. 18 (same). But neither *Amchem* nor *Ortiz* adopted any such *per se* rule. Rather, this Court (and many others) have continued to hold following *Amchem* and *Ortiz* that district courts are entitled to approve settlements that allocate different amounts to different

---

[5] *Accord In re Deepwater Horizon*, 739 F.3d 790, 813-14 (5th Cir. 2014) ("Although the creation of subclasses is sometimes necessary under Rule 23(a)(4) to avoid a 'fundamental conflict,' there is no need to create subclasses to accommodate every instance of 'differently weighted interests.'").

subgroups without the need for separately-represented subclasses so long as there is some rational basis for the differential treatment. *See* Part I.A.2, *infra*. Indeed, this Court has affirmed a district court's approval of a class action settlement that awarded a significant portion of the class *zero* recovery, rejecting an objection that the settlement ran afoul of *Amchem*. *See Mego*, 213 F.3d at 462-63.

Both *Amchem* and *Ortiz* also involved unique circumstances not present here. First, both were asbestos cases in which class members included both individuals with already-manifested injuries and yet-to-be identified individuals who might develop injuries in the future—including "claimants not yet born." *Ortiz*, 527 U.S. at 856; *see Amchem*, 521 U.S. at 628. The issue before the Court was not merely allocation, but the possibility that future claimants might have their claims extinguished with no opportunity to protect their rights because they could not opt out or would face significant obstacles to opting-out. *See Ortiz*, 527 U.S. at 821 (non-opt-out settlement); *Amchem*, 521 U.S. at 605, 627-28 (structural and practical impediments to opting-out).

Here, by contrast, the injuries allegedly suffered by all Class Members have already manifested themselves. Each member of this highly sophisticated class was able to assess its alleged injuries, reasonably estimate its recovery under the Settlement, and "decide, intelligently, whether to stay in or opt out" of the class. *Amchem*, 521 U.S. at 628. Indeed, 117 Class Members *did* opt out upon receiving

-10-

notice of the Settlement, 48 of whom had previously filed their own individual "opt out" suits before the Settlement was even announced.

Moreover, *Amchem* and *Ortiz* "each involved a situation in which the parties agreed upon a class definition and a settlement before formally initiating litigation, and then presented the district court with the complaint, proposed class, and proposed settlement" all at once. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145-46 (8th Cir. 1999). Pre-packaged settlements are subject to heightened scrutiny because of the risk of collusion. *See id.* at 1146. No such circumstances were present here, however, and the District Court found that Named Plaintiffs "vigorously prosecuted the Settlement Actions on both the state and federal level over the last six years" and "consistently and zealously" maintained that the District Court's standing and tolling rulings were erroneous. ER32-33; *see also* Part I.A.3, *infra*. Those findings may not be set aside unless clearly erroneous, and here they are indisputably correct.

To the extent *Amchem* and *Ortiz* have any relevance here, they do not mandate subclasses *per se* but instead merely require some "structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Amchem*, 521 U.S. at 627. The District Court found that many such structural assurances were present, including the participation of a retired federal judge in formulating the Plan of Allocation, the sophistication of the Class Members, the

-11-

highly-publicized nature of the litigation, and Class Members' opt-out right. *See* Part I.A.3, *infra*.

### 2. The District Court's Adequacy Determination Was Not An Abuse Of Discretion.

This Court has long recognized that separately-represented subclasses are unnecessary in a settlement that provides "disparate treatment" across class members, as long as the disparate treatment is "not irrational." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993). Under this deferential standard, this Court (and numerous others) since *Amchem* and *Ortiz* have affirmed the approval of settlements that allocate proceeds differentially without requiring separately-represented subclasses.

For example, in *Mego*, this Court affirmed the approval of a settlement under which "early purchasers" who bought during the first fifteen months of a twenty-two month class period got ***no*** recovery. The settlement allocated proceeds pursuant to a rescissory measure of damages under which the early purchasers would receive nothing. This Court noted that the settling parties and the district court had discretion to use a different damages measure, however, and had an out-of-pocket measure been used the early purchasers would have obtained a recovery. An objector argued that the "settlement provides no money ... for the overwhelming majority of the class members and ... compensate[s] only the narrow portion of the class of which its proponents ... are members." *In re Mego Fin.*

*Corp. Sec. Litig.*, 1999 WL 33623727, *14 (May 10, 1999) (appellant's brief). The objector contended that this "conflict ... requires rejection of [the] settlement" under *Amchem. Id*. at *22, 25-26.

This Court rejected those arguments, finding that the district court did not abuse its discretion by declining to create subclasses and "disposing" of the early purchasers' claims for no compensation. 213 F.3d at 463. The Court explained that its holding was "strengthened by two practical considerations"—(1) disfavored class members "were free to opt-out of the class," and (2) were the settlement not approved, "it is possible that no one will recover anything." *Id. Mego* mandates rejection of Appellants' arguments here.

*Mego* is also consistent with precedent from several other circuits allowing differing allocations of proceeds in settlements—without subclasses—where there was a rational basis for differentiating among the strengths of each group's claims. *See, e.g.*, *Deepwater Horizon*, 739 F.3d at 813-14 (Fifth Circuit affirmed settlement without subclasses that gave claimants in different locations different recoveries because that treatment was "rationally related to the strengths and weaknesses" of each group's claims); *Petrovic*, 200 F.3d at 1145 (Eighth Circuit affirmed approval of settlement without subclasses that gave property owners closest to refinery greatest recovery and those farthest away potentially nothing); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634-35 (7th Cir. 2011)

(affirming approval of settlement that gave limited recovery to early retirees due to greater litigation risk as compared to later retirees, without establishing subclass for early retirees); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009) (affirming settlement without subclasses; "While subclasses can be useful in preventing conflicts of interest, they have their drawbacks," including potential for "Balkanization" of the class and "present[ing] a huge obstacle to settlement."); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010) (same; "[D]ifferences in settlement value do not, without more, demonstrate conflicting or antagonistic interests within the class.").

Objectors do not discuss any of these cases. Indeed, beyond citing *Amchem* and *Ortiz*, Objectors cite no support for their subclass argument other than *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), arguing that this case means that where one category of class members receives less than others, there must be subclasses.[6] But *Literary Works* adopted no such bright-line rule and is otherwise factually inapposite. What *Literary Works* actually held is that "[i]t was not only appropriate but also necessary for Category C claims to recover less than Category A and B claims" because

---

[6] The FNBR Objectors argue that *Hanlon* requires subclasses when class members have claims of different strength. FNBR Br. 18. But *Hanlon* did *not* require subclasses, noting that the "treatment of each class member [was] identical" in that case. 150 F.3d at 1021. And *Hanlon* nowhere suggests that if different groups have claims of different value, separately-represented subclasses are required.

-14-

"Category C claims ... are indisputably worth less." *Id*. at 253. The Second

Circuit's finding of inadequate representation stemmed from a "reduction"

provision under which Category C bore unique economic risk not tied to—and in

addition to the discount for—the weakness of its claims: if claims exceeded $18

million, Category C compensation would be reduced *pro rata* without any

reduction for Category A or B until Category C recovery reached zero. *Id*. at 246,

253-54. *Literary Works* is thus wholly inapposite because here Category Three is

guaranteed 10% of the total recovery without any potential for reduction.[7]

### 3. Both Structural Assurances Of Adequate Representation And Practical Considerations Support The District Court's Ruling.

Buttressing the District Court's determination that subclasses were

unnecessary is the fact that there are "structural assurance[s]" here of adequate

representation other than subclasses, *Amchem*, 521 U.S. at 627, and other

"practical considerations" supporting a finding of adequate representation. *Mego*,

213 F.3d at 463.

First, Objectors have not shown that the interests of Class Members were

fundamentally misaligned. Regardless of which particular MBS certificates Class

---

[7] Even if Objectors' overly-broad reading of *Literary Works* were accurate, which it is not, it would directly conflict with this Court's ruling in *Mego* that an allocation will not be disturbed provided there is some rational basis for it, as there indisputably is here. Judge Straub's dissent in *Literary Works* likewise stated that the majority had misapplied the abuse of discretion standard and that *Amchem* and *Ortiz* only require "structural protection" of adequate representation. 654 F.3d at 258-64.

Members purchased, Named Plaintiffs unfailingly asserted over six years of litigation that all Class Members had a common interest in establishing Countrywide's alleged abandonment of loan underwriting guidelines from 2005 through 2007, arguing that they had standing to sue as to all Class Members' MBS purchases. Following the District Court's standing and tolling rulings in November 2010 and May 2011, which greatly reduced the size of the potential class for litigation purposes, the *Maine State* named plaintiffs did not simply proceed with a smaller class. Instead, they sought leave to file an interlocutory appeal, which the District Court declined as premature. SER75; SER84. The *Luther* and *Western Teamsters* plaintiffs also relentlessly advanced the interests of the Class as a whole, resisting Defendants' multiple attempts to remove those actions to federal court in the hope that the state court would reach a more favorable conclusion for them on standing and tolling issues. SER574-SER577; SER688; SER700-SER705. Even after *Luther* and *Western Teamsters* had been removed to federal court, these named plaintiffs persevered in their efforts to represent the entire Class, arguing that they had standing to represent class members in all three Categories, regardless of whether they bought the same securities as the absent class members. SER719-SER732.

Second, the participation of independent mediators, including former federal district judge Nancy Gertner's involvement in formulating the Plan of Allocation,

-16-

was a significant structural assurance of fairness and adequate representation.

Class Counsel did not decide on its own how to allocate the Settlement proceeds.

Rather, "Judge Gertner assisted Plaintiffs in developing a plan of allocation that

was fair to all class members, including those with claims based on Category Three

certificates. Judge Gertner and Professor Eric Green each evaluated the plan of

allocation and both independently concluded that it was fair to all class members."

ER33.[8]

Third, Class Members had the right to opt out. This Court has held that the

right to opt out "can alleviate ... concern about potential class conflict," *Torrisi*, 8

F.3d at 1378, and is a substantial "practical consideration[]" supporting a finding

of adequate representation. *Mego*, 213 F.3d at 463. Here, the effectiveness of the

opt-out right cannot be disputed given that "[t]hese cases ... have been the subject

of significant media attention over the last six years" and thus "[t]he putative class

members, a majority of which are highly sophisticated investors, had ample

opportunity to learn of this litigation, evaluate whether Named Plaintiffs

adequately protected their rights, and pursue their own claims if desired." ER33.

Indeed, many Class Members opted out of the putative class by filing their

---

[8] *See Williams v. Rohm and Haas Pension Plan*, 2010 WL 1490350, at *4 (S.D. Ind. Apr. 12, 2010) (finding allocation methodology fair and reasonable where reached through "arms-length negotiations" overseen by "experienced and talented mediators"), *aff'd*, 658 F.3d 629 (7th Cir. 2011).

own individual actions long before the Settlement was ever reached. More than 60

such opt-out actions were filed representing purchases of tens of billions of dollars

in MBS.[9] These include actions filed by the same counsel that now represents the

CDO Objectors here.[10] The filing of those actions belies Objectors' assertion that

"the district court's unappealed ruling on tolling ... made it impossible for [Class

Members] to opt out of the settlement." CDO Br. 18.

Moreover, Class Members had multiple opportunities to opt out.[11] They

could have filed their own individual actions after the District Court's initial

November 2010 ruling on offering-based standing or its May 2011 ruling on

tranche-based standing or at any time over the next two years before the Settlement

was announced on June 25, 2013. ER27. Class Members had yet another

opportunity to opt out afforded by the Settlement itself. As this Court aptly stated:

"Appellants were not forced into a position of having to predict whether their

---

[9] *See* Addendum at CDA24-CDA28.

[10] *See* Addendum at CDA29-CDA30.

[11] Federal law requires that notice of the filing of a securities class action be
published within 20 days. 15 U.S.C. § 77z-1(a)(3)(A). This ensures "that all
interested parties are informed of their host of options, which include making a
motion for lead plaintiff status, opting out, and making a motion for intervention."
*Emp'rs-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital
Advisors*, 498 F.3d 920, 924 n.2 (9th Cir. 2007). Here, the notice in *Maine State*
was published on February 1, 2010 (SER2-SER3), and the pendency of the *Luther*
class action was publicized before that, including in Countrywide Financial
Corporation's Form 10-Q filed with the SEC on August 11, 2008 and in Bank of
America Corporation's Form 10-K filed with the SEC on February 27, 2009. *See*
Request for Judicial Notice ("RJN"), Exs. 1 at 5 & 2 at 15.

interests would be adequately represented. They could determine whether there had been adequate representation of their interests by reviewing the terms of the settlement. If they were dissatisfied, they could opt out of the class." *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1177 (9th Cir. 1977).

Finally, as in *Mego*, this Court should weigh heavily the "practical consideration" that without the Settlement, "it is possible that no one will recover anything." 213 F.3d at 463. Under Objectors' reasoning, Class Counsel had only two options following the District Court's standing and tolling rulings and its denial of Named Plaintiffs' request to file an interlocutory appeal. The first option was to litigate the Category One claims to judgment, appeal the dismissal of the Category Two and Three claims, and then, assuming that appeal were successful, return to the District Court to litigate those claims on the merits. That process would have taken many years and exposed the Category Two and Three claims to enormous litigation risks. As the District Court held:

> The stars must align for [Category Three claims] to obtain any recovery beyond what the proposed Settlement immediately offers: they must prevail—without exception—on at least three discrete issues before the Ninth Circuit, they must withstand challenges from Defendants regarding loss causation and damages, and they must hope that Countrywide avoids bankruptcy or insolvency during the pendency of the litigation.

ER44.

Under Objectors' reasoning, the only other option available to Class Counsel would have been to agree to a settlement for the Category One and Two claims

only.  But this alternative would not have put the Category Three claims in any better position.  Through this Settlement, Category Three Class Members have been given the opportunity to participate in a $50 million settlement recovery or, if they believe they can do better, opt out and file separate individual actions, as numerous other Class Members did even before the Settlement was reached.  Given these practical considerations, the District Court cannot be said to have abused its discretion by holding that "the advocacy of Class Counsel was the best possible chance of obtaining any recovery for the Category Three class members" and that Named Plaintiffs and Class Counsel are adequate.  ER33.

## B.     The District Court's Standing Rulings And Its Adequacy And Typicality Determinations Are Not "Irreconcilable."

The CDO Objectors argue that the District Court's determinations regarding adequacy and typicality are "irreconcilable" with its prior standing rulings.  CDO Br. 18, 30.  But this argument lacks any merit.

First, Objectors' argument is self-contradictory and circular.  Objectors argue that Named Plaintiffs should have appealed the District Court's standing rulings rather than enter into this Settlement.  CDO Br. 20, 23, 26-28.  But if Named Plaintiffs are adequate and typical enough to appeal those rulings on behalf of the entire Class, then they are necessarily adequate and typical enough to enter into a settlement on behalf of the entire Class that resolves the significant litigation risk and uncertainties of recovery the Class would face in pursuing that appeal.

And Objectors nowhere contend that Named Plaintiffs lacked standing as to *any* of the claims they brought (and ultimately determined to settle) and in fact argue that the District Court erred in not finding Named Plaintiffs had standing as to *all* claims. CDO Br. 43-57.

Second, Objectors conflate the District Court's standing rulings, which addressed both statutory standing under the 1933 Act and constitutional standing under Article III, with typicality and adequacy under Rule 23. Regarding statutory standing, the District Court held that to have standing on the 1933 Act claims at issue here, Named Plaintiffs were required to have bought the specific security (tranche) in an MBS offering over which they sued. *See* ER23-24. There is nothing inconsistent between the 1933 Act's "same security" requirement and the District Court's later determination that the allegations made by Named Plaintiffs were common across the entire Class (ER31), and as a result the Named Plaintiffs' claims were typical of the Class' claims, and Named Plaintiffs could adequately represent the Class. Indeed, Objectors themselves contend that the offering documents for all 429 offerings "contained ***uniformly*** false and misleading statements and omissions regarding Countrywide's loan-origination practices," CDO Br. 1, and the complaints filed by Named Plaintiffs alleged that all of the Countrywide MBS offering documents for *all* of the tranches at issue in these class actions failed to disclose Countrywide's alleged abandonment of its underwriting

-21-

guidelines. *See, e.g.*, SER19 ("the guidelines described in the Offering Documents had been systematically disregarded"); SER658 (alleging that the defendants "failed to disclose that Countrywide systematically ignored underwriting standards imposed by state and federal law").[12]

With respect to Article III standing, the District Court's ruling that an MBS named plaintiff suffers no injury for standing purposes in connection with a tranche it did not buy likewise said nothing about whether that plaintiff can satisfy Rule 23's class certification standards. *See* ER94 ("[F]or *standing purposes*, any alleged injury flowing from an alleged misstatement as to one tranche would not necessarily constitute injury to purchasers of different tranches backed by different loan groups."). And this Court has held that the typicality requirement is satisfied as long as the named plaintiff's claims are "reasonably co-extensive" with those of the class, even if not "substantially identical." *Rodriguez*, 591 F.3d at 1124. That analysis is different from whether each one of a plaintiff's claims raises a justiciable controversy. Because these are conceptually distinct analyses, courts have held that a named plaintiff that lacks standing as to particular securities nonetheless may be sufficiently typical of class members that bought other securities to serve as a class representative under Rule 23. *See, e.g.*, *N.J. Carpenters Health Fund v. Residential Capital*, *LLC*, 272 F.R.D. 160, 165-66

---

[12] *See also, e.g.*, SER25-SER26; SER27; SER653-SER654; SER656.

(S.D.N.Y. 2011); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 283 (S.D.N.Y. 2003).[13]

In any event, so long as the standing question remains uncertain in the MBS context—neither this Court nor the Supreme Court has definitively answered it—the District Court could permissibly approve the parties' mutual, classwide resolution of that uncertainty through settlement. Indeed, at the final approval hearing, Judge Pfaelzer acknowledged that the law on this issue is "in serious flux" and that "[w]e will have to wait to see how [it] all turns out." SER525. Regardless of whether Judge Pfaelzer had ruled that Named Plaintiffs have standing to sue over all tranches in all MBS offerings included in their complaints or ruled as she did, this uncertainty would still exist—and uncertainty is precisely why settlements are reached. Indeed, in an analogous context, the Seventh Circuit in *Air Line Stewards & Stewardesses Ass'n, Local 550 v. TWA, Inc.*, 630 F.2d

---

[13] Objectors contend *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982), and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), hold that a class may be certified only when named plaintiffs suffer the "same injury" as class members. CDO Br. at 30. But what those cases actually hold is that a class representative must have suffered the "same injury ... ***such that*** the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims." *Falcon*, 457 U.S. at 157; *Dukes*, 131 S. Ct. at 2553. And the District Court's holding here that Named Plaintiffs did not suffer injury from tranches they did not buy was not a determination that the claims of Named Plaintiffs and those of the Class would not share such common questions (*e.g.*, whether Countrywide allegedly had abandoned its underwriting practices) sufficient to satisfy the standards for typicality.

1164, 1168-69 (7th Cir. 1980), held that the district court appropriately approved a settlement embracing the claims of all class members even though the Seventh Circuit earlier had held in the same case that the district court lacked subject matter jurisdiction over the claims of 92% of the class. Because the Supreme Court had not definitively resolved these jurisdictional issues and because they remained uncertain, the Seventh Circuit affirmed the settlement's approval as an appropriate exercise of the district court's discretion. The Court explained:

> [T]he principles favoring settlement of class action lawsuits remain the same regardless of whether the disputed legal issues center on the jurisdiction of the court over the action. Where, as here, the jurisdictional question is not settled with finality, parties should not be forced to litigate the issue of jurisdiction if they can arrive at a settlement that is otherwise appropriate for district court approval.

*Id*. at 1169. The same is true here, where the standing issue has not been "settled with finality."

But the ultimate result of Objectors' position here would be that no settlement could ever be approved where the named plaintiffs' standing to represent the entire settlement class has not been "settled with finality." Class representatives would be forced to litigate their standing potentially for many years until finally determined on appeal or, alternatively, try to settle only that portion of the class' claims as to which standing were clear. But "achieving global peace is a valid, and valuable, incentive to class action settlements," *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 311 (3d Cir. 2011), and most defendants would be

-24-

*disincentivized* from entering into partial settlements of fewer than all claims for fear of potential future exposure as to the unresolved claims.

In short, global settlements of complex class litigation like that now before this Court—which already had been fought in both state and federal court *for six years* before it settled—should be encouraged, not discouraged. "[T]here is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008). Litigants should not be forced "against their will to continue a legal battle before [this Court and ultimately] the Supreme Court in a winner-take-all contest which neither party desires to risk." *Air Line Stewards*, 630 F.2d at 1168. Given all of these considerations, Judge Pfaelzer's exercise of discretion in finding the Named Plaintiffs adequate and their claims typical—and permitting this long-running, complex litigation to be resolved with finality—should be affirmed.

## II. THE DISTRICT COURT APPROPRIATELY EXERCISED ITS BROAD DISCRETION IN FINDING THE SETTLEMENT AND PLAN OF ALLOCATION FAIR AND REASONABLE.

The CDO Objectors challenge the fairness of both the Plan of Allocation and the $500 million settlement amount. But "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [she] is exposed to the litigants, and their strategies, positions and proof." *Hanlon*, 150

F.3d at 1026.  Judge Pfaelzer's careful consideration and ultimate approval of the Settlement and Plan of Allocation were well within her discretion.

For purposes of this appeal, the Countrywide Defendants-Appellees adopt the discussion in Plaintiffs-Appellees' brief (at 52-57) of the District Court's determinations as to the fairness and reasonableness of the Settlement and the Plan of Allocation, and respectfully make the following additional points as well.

## A.   The District Court's Consideration Of The Settlement's Fairness and Reasonableness Was Painstakingly Thorough And Thoughtful.

Objectors malign the District Court's settlement approval process, claiming it "brush[ed] ... objections aside" (CDO Br. 16), "papered over" intra-class conflicts (CDO Br. 39), and "abdicated" its role as protector of absent class members (FNBR Br. 9).  Nothing could be further from the truth.  The District Court's consideration of the proposed settlement was extraordinarily careful and robust, reflecting appropriate and specific attention to the interests of Category Three class members.

Before granting even preliminary approval to the Settlement, the District Court held two separate hearings in which it *sua sponte* raised questions regarding the Plan of Allocation and adequacy of representation of Category Three class members.  SER86-SER148; SER149; SER174; SER764-SER786.  These included an initial preliminary approval hearing on July 10, 2013, as well as a second preliminary approval hearing on August 1, 2013 after submission by Named

-26-

Plaintiffs of a lengthy brief addressing why Plaintiffs and Class Counsel believed the proposed plan of allocation should be approved (plus a telephonic conference on July 5, 2013). SER85; SER149; SER174. At the first preliminary approval hearing, the District Court ordered Named Plaintiffs to submit supplemental briefing regarding the fairness of the Plan of Allocation (SER149), and, before the second hearing, the District Court issued an order directing Named Plaintiffs to "address the issue of adequacy of representation" at the hearing. ER183 (Dkt. No. 421); SER462. At that second hearing, the District Court stated that it "want[ed] to be sure that there are no conflicts and that [the settlement] is fair" and asked Class Counsel probing questions regarding formulation of the Plan of Allocation and adequacy of representation. SER767. Only after satisfying itself on these issues did the District Court enter a preliminary approval order on August 7, 2013. ER27-ER28.

On October 28, 2013, the District Court held the final approval hearing after receiving still more briefing from Named Plaintiffs addressing the fairness and reasonableness of the Settlement and Plan of Allocation, objections submitted by the Objectors, and Plaintiffs' reply brief addressing those objections. SER175-SER499. After hearing arguments from all Objectors and Class Counsel, the District Court stated that it had "tentatively" determined to approve the Settlement, but that no final order would be issued until the District Court took another "last

look at the settlement documents and wr[o]te something which is an adequate order." SER549.

On December 17, 2013, the District Court issued a detailed, 32-page order approving the Settlement. The District Court noted in that order that it had "carefully considered and rejected each of the objectors' arguments—presented in written submissions and at the fairness hearing—as ultimately lacking a basis in fact and law." ER43.

The factual findings and legal rulings made by Judge Pfaelzer in this order were informed by her deep knowledge of the class claims being settled and her thoughtful analysis of the standing, tolling, and timeliness issues they presented. Judge Pfaelzer's involvement with these MBS claims began in 2007 when she remanded *Luther* upon its first removal to federal court. Her involvement continued in 2010 and 2011 when she issued her initial offering-based and tranche-based standing rulings in *Maine State*, which became the foundation for multiple later rulings in the individual "opt-out" actions that she would preside over as part of the Countrywide MBS multi-district litigation into which virtually all of those individual actions were centralized.[14] Through her management not only of the

---

[14] *See, e.g.*, *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125 (C.D. Cal. 2011); *Putnam Bank v. Countrywide Fin. Corp.*, 860 F. Supp. 2d 1062 (C.D. Cal. 2012); *FDIC as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.*, 2012 WL 5900973 (C.D. Cal. Nov. 21, 2012); *FDIC as*

class litigation at issue here after removal, but also her oversight of the 42 cases in the *Countrywide MBS MDL*, Judge Pfaelzer developed great expertise in the factual and legal issues common to these MBS claims. And, as a result of her many years of involvement with these issues, Judge Pfaelzer could evaluate better than anyone else the multiple dimensions of litigation risk and ultimately uncertain recovery faced by the Class, particularly those in Category Three. This Court's words in *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1992), are thus entirely apt here: "it is appropriate to note that the complexity, duration, and sheer enormity of [the] MDL ... weighs heavily against a conclusion that the district court abused its discretion in approving the Consolidated Settlement."

## B. The District Appropriately Exercised Its Broad Discretion In Finding The Total Settlement Amount Fair And Reasonable.

The District Court appropriately considered the large settlement amount ($500 million) to be a significant factor supporting approval, particularly in light of the weakness of the Class' legal claims, the legal and factual defenses that Defendants would assert, and the ultimate uncertainty of any recovery. The CDO Objectors' challenge to this one-half-billion-dollar recovery is based on deeply flawed math and lacks any merit.

---

*Receiver for Guaranty Bank v. Countrywide Sec. Corp.*, 966 F. Supp. 2d 1018 (C.D. Cal. 2013).

First, the CDO Objectors argue that the face amount of the MBS at issue here (the denominator in their average-recovery calculations) is $451 billion. *See* CDO Br. 9; SER323. But the record shows this assertion is wrong. The Consolidated Complaint correctly states that the total amount of securities offered was *nearly $100 billion less*. *See* SER621-SER652 (¶ 55) ($353 billion in MBS offered). The CDO Objectors ignored this number, and instead incorrectly tallied face-value estimates for the certificates listed in the prospectus supplements as provided by a third-party software program. *See* ER141-ER142; SER333-SER449. By doing so Objectors significantly overcounted the face values of certificates included in an offering. This is because the prospectus supplements list numerous "depositable" certificates and also related "exchangeable" certificates into which they can be exchanged. These exchangeable certificates may be obtained only by exchanging depositable certificates for them in combinations as specified in the prospectus supplement.[15] Counting the face value amounts of both the exchangeable certificates and the depositable certificates as if they are all

_____

[15] For example, a declaration submitted by Objectors to the District Court improperly counted both tranches A1 and A20 of CWALT 2007-11T1 as each having a face value of $70,965,794. *See* SER383 (Grais Ex. 26). But tranche A1 is a Depositable Certificate and tranche A20 is the related Exchangeable Certificate. RJN, Ex. 3 at 25. "All or a portion of the Depositable Certificates may be exchanged for a proportionate interest in" an Exchangeable Certificate, but "only in proportions that result in the principal and interest entitlements of the certificates being received *being equal to the principal and interest entitlements of the certificates surrendered*." *Id.* at 22.

outstanding and represented separate claims on the trusts' assets at the same time (as Objectors did) results in a grossly-inflated total value.  In addition, CDO Objectors incorrectly included in their calculations "notional amounts" for interest-only tranches that receive no principal payments even though they are not included in the total face amount of the offering.[16]  Because the CDO Objectors overcount the face values of many offerings, their comparison of this Settlement's average recovery to the average recovery of other MBS settlements is fundamentally flawed.

Second, Objectors' face value and average recovery calculations are inaccurate because they ignore that numerous Class Members that purchased tens of billions of dollars in MBS included in the Settlement opted out and filed their own separate actions even before the Settlement was announced.  *See, e.g*., RJN, Ex. 5 ($26.6 billion in Countrywide MBS purchased by Fannie Mae and Freddie Mac in action brought by FHFA); Ex. 6 (more than $9 billion in Countrywide MBS purchased by AIG); Ex. 7 ($1.5 billion in Countrywide MBS purchased by Guaranty Bank in action brought by FDIC).  Because those putative class

---

[16] For example, Objectors count tranche 2C of CWHL 2006-3.  *See* SER413.  But the prospectus supplement states that tranche 2C and certain others are "interest-only certificates that will ***not have initial class certificate balances***," instead having "initial notional amounts" equal to the certificate balance of the related tranche receiving principal payment.  RJN, Ex. 4 at 34.  For this reason, the interest-only certificates are not counted as part of the offering's face value listed on the front of the prospectus supplement.  *Id.* at 30-31.

members—and others that bought billions of dollars more of Countrywide MBS—
have opted out of the Class and will not be participating in the Settlement, the *pro
rata* recovery for the remaining Class Members will be higher than the average
recovery calculated by Objectors.

Third, in arguing that a massive settlement for half-a-billion dollars will
somehow undercompensate the Class, the CDO Objectors further ignore the $8.5
billion settlement in *In re Bank of New York Mellon* (Index 651786/2011), which
has been approved by the New York Supreme Court and from which Class
Members who still hold their certificates will also recover.[17]  That settlement was
entered into by Countrywide, Bank of America, and Bank of New York Mellon
("BNYM") in its capacity as trustee for virtually all of the same MBS trusts
included in the Settlement here ("BNYM Settlement"), and settled, among other
things, allegations of breaches of representations and warranties regarding
Countrywide's origination of loans in these MBS trusts.  These are fundamentally
the same allegations that Named Plaintiffs made in the class actions at issue here,
and Class Members who still hold their MBS certificates will benefit when the
$8.5 billion recovered in that settlement is paid to the trusts for distribution to
certificateholders.  *See* RE159-60 (Settlement Agreement § 1(rr)).  Indeed, Judge

---

[17] The New York Supreme Court's decision approving this $8.5 billion settlement
in all but one respect is now on appeal to the New York Appellate Division.

Pfaelzer acknowledged that this Settlement is "complementary" to the BNYM

Settlement.  SER510; SER770-SER771.[18]

Fourth, in comparing this Settlement to the settlements of other MBS actions

based on the face values of MBS at issue in them and total settlement proceeds, the

CDO Objectors ignore the District Court's finding here that this litigation presents

unique and significant standing and timeliness obstacles for the Class (particularly

those in Category Three) that make any such comparison inapt, not to mention

difficulties in proving loss causation and ultimately recoverable damages.[19]  The

CDO Objectors argue that the District Court's analysis of these issues is vulnerable

on appeal.  But the CDO Objectors' attempt to have this Court reweigh the

litigation risks considered by the District Court mistakes the proper role of this

Court in reviewing the approval of the Settlement.  *See* Part III, *infra*.[20]

This Settlement is the largest MBS class settlement in history and one of the

largest securities class action settlements ever.  In light of the District Court's

---

[18] *See also* SER264 (class members' losses "offset" by BNYM Settlement).

[19] The CDO Objectors argue that the District Court "acknowledged compelling
evidence" of Countrywide misconduct.  CDO Br. 42.  But, in the opinion they cite,
the District Court held only that certain *unproved allegations* were sufficient to
withstand a *motion to dismiss*.  *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F.
Supp. 2d 1044, 1058 (C.D. Cal. 2008).

[20] Objectors compare this Settlement to one with FHFA.  CDO Br. 40 n.4.  But this
comparison is inapt because that settlement included claims as to tens of billions of
dollars of non-Countrywide securities issued by Merrill Lynch and Bank of
America, and $4 billion of the settlement amount was for repurchase of those
securities, not an element of the settlement consideration here.

extensive history with this litigation and intimate knowledge of the parties, attorneys, and legal and factual issues involved in Countrywide MBS claims, and given the significant risks and uncertainties Named Plaintiffs and the Class face, Judge Pfaelzer's conclusion that this half-billion-dollar Settlement is fair, reasonable, and adequate was not an abuse of discretion and should be affirmed. As this Court said in *Officers for Justice*, 688 F.2d at 625-26, settlement approval is entrusted to the "sound discretion of the trial judge" because she "is exposed to the litigants, and their strategies, positions and proofs [and] ... is aware of the expense and possible legal bars to success. Simply stated, [she] is on the firing line and can evaluate the action accordingly."[21]

## III.   ALTHOUGH WELL-GROUNDED, THE CORRECTNESS OF THE DISTRICT COURT'S MERITS RULINGS IS NOT AT ISSUE.

Although Objectors argue that the District Court's standing and tolling rulings were "erroneous," the correctness of those rulings is not at issue here. As this Court explained in *Officers for Justice*, when reviewing a proposed class action settlement:

---

[21] Should this Court have any concern about the Plan of Allocation, it should remand only for modification of that plan. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311-12 (9th Cir. 1990) (affirming approval of class settlement but remanding solely for reformulation of method for distribution of proceeds); *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 174 (3d Cir. 1987) (affirming approval of class settlement but remanding solely for reformulation of plan of allocation).

> Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.

688 F.2d at 625; *Class Plaintiffs*, 955 F.2d at 1284-85 (rejecting objectors' attempt to "reargue" prior rulings of district court during review of settlement approval); *Williams*, 658 F.3d at 634-35 (deferring to district court's assessment of litigation risks associated with unsettled legal issues because district court was "well suited" to decide whether the risks "justified the compromise embodied by the proposed settlement"); *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960) (in reviewing settlement, "it would be improper for us to indicate what the rule of law should be"; proper inquiry is "was the proposed settlement a reasonable evaluation of the risks of litigation?").

Rather, the question in this appeal is whether the District Court abused its broad discretion in concluding that the Settlement and Plan of Allocation are fair and reasonable taking into account the substantial uncertainties and risks to recovery that the Class faced by virtue of the Court's standing and tolling rulings. *See* ER36-40. Regardless of whether those rulings were correct (and the Countrywide Defendants-Appellees submit they were), what is relevant here is whether the District Court exercised reasonable discretion in assessing the risks of

-35-

further litigation posed in part by those rulings. As one appellate court has

explained:

> This is not to say that a reviewing court should not look to the merits of the Plaintiffs' case, but that review should be limited to assessing rough probabilities of success as they existed at the time of the settlement.... Were the rule otherwise, parties would be hesitant to explore the likelihood of settlement apprehensive as they would then be that the application for approval would necessarily result in a judicial determination that there was no escape from liability or no hope of recovery and thus no basis for a compromise.... If this were procedurally proper, why would a party in [that] position ever settle a case?

*Pickett v. Holland Am. Line-Westours, Inc.*, 35 P.3d 351, 357 (Wash. 2001)

(collecting federal cases).

Here, the District Court's consideration of the litigation risks flowing from

its standing and tolling rulings was indisputably appropriate. Those rulings were

thoughtful, consistent with established law, involved complex issues on which

courts could reasonably disagree (and have disagreed), and Named Plaintiffs

*needed to overturn not one but several of those rulings even potentially to reach a*

*trial on the merits*. The Settlement thus appropriately reflects the enormous risks

to recovery Named Plaintiffs faced if they pursued further litigation, and approval

of the Settlement was a reasonable exercise of the District Court's discretion.

## A.   <u>The Standing Rulings Were Legally Well-Grounded.</u>

Objectors argue that the District Court erred by holding that Named

Plaintiffs lacked standing to assert claims as to any MBS offering, and any tranche

-36-

within an offering, they did not actually buy. CDO Br. 43-51. Not only did these rulings present huge appellate risk for Named Plaintiffs and the Class, but they were legally well-grounded.

### 1.   Offering-Level Standing.

Objectors argue that the District Court should have followed the "class standing" rule adopted in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012). But not a single court in an MBS case outside the Second Circuit has followed *NECA* in the nearly two years since *NECA* was issued. And aside from *NECA*, "[e]very court to address the issue in a MBS class action has concluded that a plaintiff lacks standing under Article III of the U.S. Constitution and under Sections 11 and 12(a)(2) of the 1933 Act to represent the interests of investors in MBS offerings in which the plaintiffs did not themselves buy." ER123 (collecting cases). And the only other appellate decision to address standing in the MBS context, *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770 (1st Cir. 2011), agreed with the District Court that named plaintiffs lack standing to sue as to MBS offerings in which they never purchased. In short, the District Court's offering-level standing ruling is not the outlier—*NECA* is.

The District Court's standing rulings—based both on Article III and the statutory standing requirements of the Securities Act—also make good sense.

Each MBS offering was issued pursuant to a unique set of offering documents, which made unique representations regarding the unique pools of loans backing each of those securities. To establish Article III standing, plaintiffs must show that they suffered an "injury in fact" that was "fairly traceable to the challenged action of the defendant" and would "be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Because Named Plaintiffs here did not buy in hundreds of the offerings at issue, the District Court soundly concluded as to those offerings there was no justiciable "'case or controversy' ... within the meaning of Article III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Moreover, statutory standing under the Securities Act is limited to the person who actually purchased "such security." 15 U.S.C. § 77k(a); 15 U.S.C. § 77*l*(a). This "means that the person must have purchased a security issued under that, rather than some other, registration statement." *Hertzberg v. Dignity Partners*, 191 F.3d 1076, 1080 (9th Cir. 1999). When offerings are made pursuant to multiple prospectus supplements, however—as the MBS here were—each supplement "shall be deemed to be a new registration statement relating to the securities offered therein." 17 C.F.R. § 229.512(a)(2); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 964 (N.D. Cal. 2010). Thus, as the District Court correctly held, Plaintiffs lack statutory standing to assert Securities Act claims as to offerings in which they did not purchase.

The Second Circuit's reasoning in *NECA*, on the other hand, suffers from several fundamental flaws. *First*, as the District Court explained, *NECA* "combines the distinct stages of standing and class certification," and "allows Rule 23 to trump Article III of the Constitution." *Strategic Capital*, 2012 WL 5900973, at *10. In *NECA*, the Second Circuit acknowledged that a named plaintiff "clearly lacks standing to assert ... claims on its behalf" where "it did not purchase those Certificates," but then created a new concept called "class standing," holding that plaintiffs who lack standing on their own may nevertheless assert claims on behalf of others who suffered a different injury but share "the same set of concerns." 693 F.3d at 158, 162-63. But this conflates standing (whether the named plaintiff has been personally injured by the alleged misconduct) and class certification (whether that plaintiff can represent others who have the same claims) and is inconsistent with both Supreme Court and Ninth Circuit precedent.

Standing is a "threshold question in every federal case," *Warth*, 422 U.S. at 498, and "a plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-53 (2006). If "none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself *or any other member of the class*." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). As the Supreme Court explained in *Lewis v. Casey*, 518 U.S. 343, 357-58 (1996):

> That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class ... which they purport to represent.

*Accord LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985) (same). Thus, if a named plaintiff lacks standing as to a particular claim, "she cannot represent others who may have such a claim." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

*Second*, the Second Circuit erred in *NECA* by concluding that purchasers of different MBS offerings share "the same set of concerns" for standing purposes if they are backed by loans originated by a common lender. According to *NECA*, "if the mortgage originator abandoned the underwriting standards as to the named plaintiff's certificates, then all other certificates backed by that originator also contain misstatements." *Strategic Capital*, 2012 WL 5900973, at *11 (referencing *NECA*). But, as the District Court explained, the alleged misconduct here—and the source of injury for standing purposes—"was not the common abandonment of underwriting standards by the mortgage originator," but "the inclusion of misstatements in the specific documents filed with the SEC, pursuant to which the plaintiffs bought the certificates." *Id*. at *11 n.23. Thus, "[n]amed plaintiffs only have the same set of concerns as class members when they have read the same filings with the same statements as the class members." *Id*. at *11.

*Third*, *NECA* "fails to account for the differences between securities cases involving MBS and class actions based on other kinds of securities and injuries." *Id*. at \*10.  In fashioning its "class standing" rule, *NECA* analogized different MBS offerings pursuant to a common shelf registration statement to shelf offerings of corporate debt securities.  693 F.3d at 163.  But unlike corporate debt securities, which are all issued by a single issuer and repaid by the same pool of corporate assets, "[e]ach certificate in an RMBS is backed by different loan pools, described in the offering documents, and the representations made in the prospectus supplements about each certificate are therefore unique." *Strategic Capital*, 2012 WL 5900973, at \*11.

*Fourth*, *NECA* addressed only Article III standing—not statutory standing under the Securities Act.  But plaintiffs must satisfy both the constitutional standing requirements of Article III *and* the statutory standing requirement of the Securities Act that plaintiffs must have bought the security on which they sue.  Thus, *NECA* does not call into question the District Court's holding that Plaintiffs lack statutory standing as to MBS they never bought.

In short, Named Plaintiffs and the Class faced enormous risks and uncertainties if they chose to appeal the District Court's offering-level standing ruling.  This ruling was in line with that of every other court to address this issue save for *NECA*.  The District Court's approval of the Settlement, taking into

account this ruling and the litigation risks it represented, was a reasonable exercise of its broad discretion.

## 2. **Tranche-Level Standing.**

The District Court's tranche-level standing ruling is also well-reasoned and consistent with established law, and the District Court's consideration of the litigation risks associated with that ruling was within its broad discretion as well. Contrary to what Objectors say, the District Court is not the only court to hold that named plaintiffs lack standing as to MBS tranches they did not purchase. In *In re Wash. Mut. MBS Litigation*, 276 F.R.D. 658, 663 (W.D. Wash. 2011) ("*WaMu*"), the court held that "Plaintiffs' standing is ... limited only to those tranches in which they actually purchased certificates." The *WaMu* court explained that "[e]ach tranche of MBS is an individual security," with "its own CUSIP, credit rating, risk profile, payment rights, payment priority, principal balance, and interest rate," and the Securities Act "require[s] the plaintiff to have actually purchased the security upon which it seeks to sue." *Id.* It also held that plaintiffs lacked Article III standing because they "can show no personal injury arising out of those ... tranches of MBS that they did not purchase." *Id.* Similarly, in *Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, 2012 WL 601448, *7 (E.D.N.Y. Feb. 23, 2012), the court dismissed for lack of statutory standing plaintiffs' Securities Act claims, holding that "each Certificate is

a unique security" and that "Sections 11 and 12(a)(2) require a plaintiff to be a purchaser or acquirer of the security at issue."

Objectors do not dispute that each tranche in an MBS offering is a separate security or that the plain language of the Securities Act requires plaintiffs to have purchased the specific security on which they are suing. Instead, they ignore statutory standing altogether. Nor do they dispute that many of the MBS offerings at issue here were backed by multiple loan groups, each group containing a different mix of unique loans. This is important to the standing analysis:

> Because the loan groups backing the Certificates differed from tranche to tranche, the statements regarding underwriting and credit characteristics found in the prospectus supplements for those MBS deals were essentially different statements for each tranche, given that the point of reference for those statements—the loan groups—differed at the tranche level. In other words, an alleged misstatement as to the origination practices with respect to one loan group backing a particular tranche would not necessarily constitute a misstatement as to a different loan group backing a different tranche.... Accordingly, for standing purposes, any alleged injury flowing from an alleged misstatement as to one tranche would not necessarily constitute injury to purchasers of different tranches backed by different loan groups.

ER93-94.

Objectors are correct that some other courts (including the Second Circuit in *NECA*, which had the effect of vacating *Plumbers' Union*) have reached a different conclusion on tranche-level standing. *See NECA*, 693 F.3d at 164-65; CDO Br. 50. But again, this Court's task is not to determine which of these two lines of cases is correct. Rather, this Court need only assess whether it was within the District

-43-

Court's broad discretion to take into account the litigation risk and uncertainties facing the Class as a result of its tranche-level standing rulings, which it certainly was. The District Court's tranche-level standing rulings were carefully and thoughtfully explained in lengthy decisions that addressed both the legal underpinning and the unique attributes of MBS that supported the District Court's reasoning. Indeed, the fact that several federal courts have disagreed on tranche-level standing only underscores the uncertainty that Named Plaintiffs faced on this issue when they agreed to settle.

## B.    The Tolling Rulings Were Legally Well-Grounded.

Named Plaintiffs also faced substantial risks with respect to the timeliness of the dismissed claims, further confirming the reasonableness of the District Court's approval of the Settlement.

### 1.    *American Pipe* Does Not Apply To State Court Class Actions.

In two other cases in the *Countrywide MBS MDL*, the District Court held that *American Pipe*[22] class action tolling cannot be triggered by the filing of a class action in state court (like *Luther*). *Strategic Capital*, 2012 WL 5900973, at *12-13; *FDIC as Receiver for Sec. Sav. Bank v. Banc of Am. Sec. LLC*, 934 F. Supp. 2d 1219, 1232-33 (C.D. Cal. 2013). This ruling is consistent with both the language of *American Pipe*, which was expressly "limited" to "the relationship between a

---

[22] *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

statute of limitations and the provisions of Federal Rule of Civil Procedure 23 regulating class actions *in the federal courts*," 414 U.S. at 540, and this Court's own precedent, which noted that *American Pipe* "allows tolling *within the federal court system*," *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008).

The purpose of *American Pipe* is to promote "the efficiency and economy" of "Rule 23 class actions" in federal court by permitting class members to rely on class actions instead of clogging the federal courts with "needless" and "duplicati[ve]" individual filings to preserve their rights. *Am. Pipe*, 414 U.S. at 553-54. In other words, *American Pipe* did not create a substantive tolling right for absent class members in all courts, but relied on the policies underlying a *federal procedural rule*—Rule 23—to permit limited tolling in *federal* class actions to avoid inefficiencies in the *federal* courts.[23]

Although Objectors complain about these rulings, CDO Br. 56-57, the District Court did not apply them to the class actions at issue in this appeal. In

---

[23] *Accord In re Copper Antitrust Litig.*, 436 F.3d 782, 793-94 (7th Cir. 2006) ("Not only is there no suggestion in *American Pipe* or in *Crown, Cork & Seal* that these decisions construing Federal Rule of Civil Procedure 23 have any direct application to parallel state procedures, but the policies underlying *American Pipe* and like precedents simply do not apply in the cross-jurisdictional context."); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 287 (4th Cir. 1999) (courts have "no interest ... in furthering the efficiency and economy of the class action procedures of another jurisdiction").

fact, as Objectors themselves note, the District Court initially reached the opposite

conclusion in *Maine State*, *id*. at 56, and never dismissed any claims in these

actions on this basis prior to the Settlement.  Nonetheless, the District Court's

ruling in *Strategic Capital* may have eventually resulted in the dismissal of *Maine*

*State* and *Teamsters* in their entirety as untimely, and thus presented a further, very

substantial, risk to Named Plaintiffs that supported the reasonableness of the

Settlement.  And, like the District Court's other merits rulings, the correctness of

this ruling is not before this Court in this appeal.

In any event, Objectors' assertion that "every court to weigh in has indicated

that statutes of limitation can ... be tolled by state-court class actions" is false.

CDO Br. 56.  To the contrary, in *NCUA v. Morgan Stanley & Co., Inc*., 2013 WL

6842596, *4-5 (D. Kan. Dec. 27, 2013), the district court found "the reasoning of

the *Countrywide* court to be persuasive," and "conclude[d] that *American Pipe*

tolling is limited to prior class actions in federal court."  And the contrary cases

cited by Objectors are unpersuasive[24] or inapposite.[25]  CDO Br. 56.

---

[24] *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011), misconstrued *American Pipe* and *Chardon v. Fumero Soto*, 462 U.S. 650 (1983), both of which made clear that *American Pipe* is "a federal rule of tolling applicable to class actions brought under Federal Rule of Civil Procedure 23." *Chardon*, 462 U.S. at 663-64 (Rehnquist, J., dissenting); *id.* at 654, 660-61 (majority); *Am. Pipe*, 414 U.S. at 540, 553-54.  *Machesny v. Ramsgate Ins., Inc.*, 2014 WL 2605479, *3-4 (E.D. Mich. June 10, 2014), merely relied on *Sawyer*.

[25] *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987), involved analogous New York

## 2. *American Pipe* **Does Not Apply To Statutes of Repose.**

Objectors also ignore the risks the Class faced with respect to whether

*American Pipe* tolling applies to the 3-year statute of repose in Section 13 of the

Securities Act. 15 U.S.C. § 77m ("[i]n no event" shall action be brought more than

three years after offering or sale). In *Maine State*, the District Court held that

*American Pipe* tolling applies to repose periods. ER128. Other courts have

disagreed, holding that repose periods are absolute cutoffs that cannot be tolled.

*E.g.*, *Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, 770 F. Supp. 2d 618,

624-27 (S.D.N.Y. 2011); *In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d

477, 482-83 (S.D.N.Y. 2011).

In particular, in *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721

F.3d 95, 101 (2d Cir. 2013), the Second Circuit held that "*American Pipe's* tolling

rule does not apply to the three-year statute of repose in Section 13." The Supreme

Court recently granted certiorari in *IndyMac*, and the case will be heard in the

upcoming term. If the Supreme Court affirms *IndyMac*, the Class' claims as to

thousands of MBS tranches would be time-barred.[26] And the Supreme Court's

---

state law tolling principles, not the federal *American Pipe* doctrine. *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 2012 WL 426267, *3 n.2 (D.N.J. Feb. 7, 2012), only addressed this issue in dicta, as the defendants did not argue that *American Pipe* was inapplicable to state court class actions.

[26] *IndyMac* held that a putative class action complaint does not suspend the running of the Securities Act's three-year repose period as to claims brought on behalf of

decision in *CTS Corp. v. Waldburger*, 573 U.S. __ (2014), suggests that an affirmance in *IndyMac* is likely. In *Waldburger*, the Court explained that statutes of repose "put[] an outer limit on the right to bring a civil action" and "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Id*. at 6-7. As such, "[s]tatutes of repose ... generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control." *Id*. at 7. *Waldburger*—and the prospect of an affirmance in *IndyMac*—further underscore the litigation risks the Class faced and further support the reasonableness of the District Court's approval of the Settlement.

### 3.  Lack of Standing Forecloses *American Pipe* Tolling.

The District Court also held that *American Pipe* tolling is inapplicable where named plaintiffs lack standing, which rendered Named Plaintiffs' and the Class' claims untimely as to many MBS tranches. ER129. This is yet another ruling that Named Plaintiffs and the Class would need to defeat to recover on appeal, and the District Court appropriately took this into account in exercising its discretion to approve the Settlement as fair and reasonable. And the District Court's ruling was in line with that of numerous other courts.

---

absent class members. If *IndyMac* is affirmed, the claims of all Class Members other than those of Named Plaintiffs themselves will be time-barred.

More specifically, *American Pipe* noted that it was not addressing cases where class certification is denied "for lack of standing of the representative," carefully restricting tolling "to all asserted members of the class *who would have been parties had the suit been permitted to continue as a class action*." 414 U.S. at 553-54. As the District Court explained: "If the named plaintiff lacks standing to represent a particular plaintiff, then that plaintiff would not have been a party to the class action, and *American Pipe* does not toll that plaintiff's claims." *Putnam*, 860 F. Supp. 2d at 1068.

There are two principal reasons for this limitation. First, it arguably "would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed because the claimant had no power to bring it." *Palmer v. Stassinos*, 236 F.R.D. 460, 465 n.6 (N.D. Cal. 2006); *accord Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998) (same). Second, if *American Pipe* tolling applied despite a plaintiff's lack of standing, "this would clearly encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule." *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2010 WL 6508190, *2 n.1 (S.D.N.Y. Dec. 15, 2010). As Justice Blackmun warned in *American Pipe*, the tolling rule "must not be regarded as encouragement to lawyers ... to frame their pleadings as a class action, intentionally, to attract and

-49-

save members of the purported class who have slept on their rights." 414 U.S. at

561 (Blackmun, J., concurring); *accord Crown, Cork & Seal Co. v. Parker*, 462

U.S. 345, 354 (1983) (Powell, J., concurring) (same). Here, the District Court

"share[d] the concern" that allowing tolling without standing "will encourage

filings made merely to extend the period in which to find a class representative."

ER129.

The District Court did acknowledge that "[i]n certain cases, where the

standing of an original class action plaintiff is a matter of bona fide dispute, it may

well be unfair to subsequently bar plaintiffs who reasonably-but-mistakenly relied

on that plaintiff to represent their interests." *Putnam*, 860 F. Supp. 2d at 1069-70.

But the District Court concluded *Luther* "is not such a case." *Id.* at 1070. Here,

the District Court held that the *Luther* complaints did not provide information

sufficient to inform absent Class Members as to whether Named Plaintiffs had

standing to pursue claims on their behalf. *Id.*; *Strategic Capital*, 2012 WL

5900973, at *13-14.

The District Court also noted that there is "considerable disagreement

among district courts" throughout the country on this issue. *Strategic Capital*,

2012 WL 5900973, at *9. Objectors do not dispute that many courts have agreed

with the District Court in holding that *American Pipe* tolling is inapplicable to

claims the original class plaintiffs had no standing to bring.[27]  But as with tranche-level standing and the issue of whether *American Pipe* applies to state court class actions, the split of authority on this tolling issue merely confirms that Named Plaintiffs and the Class faced substantial risk and uncertainty with respect to the timeliness of their claims, and their decision to agree to the Settlement—and the District Court's determination in light of those risks to approve it as fair and reasonable—were amply justified.  In light of this Court's limited scope of review, that is all that matters here.[28]

---

[27] *See, e.g.*, *Walters*, 163 F.3d at 432; *Palmer*, 236 F.R.D. at 465-66; *N.J. Carpenters Health Fund*, 2010 WL 6508190, at *2; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 3155693, *4-5 (N.D. Cal. Aug. 2, 2012); *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 237 (S.D.N.Y. 2012); *Boilermakers Nat'l Annuity Trust Fund v. WAMU Mortg. Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1258-59 (W.D. Wash. 2010); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 2010 WL 4117477, *6 (N.D. Cal. Oct. 19, 2010); *Kruse v. Wells Fargo Home Mortg., Inc.*, 2006 WL 1212512, *5-6 (E.D.N.Y. May 3, 2006); *In re Colonial Ltd. P'ship*, 854 F. Supp. 64, 82 (D. Conn. 1994); *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 378 (D. Mass. 1987).

[28] The cases cited by the CDO Objectors—*Catholic Social Svcs. v. INS*, 232 F.3d 1139 (9th Cir. 2000), *Griffin v. Singletary*, 17 F.3d 356 (11th Cir. 1994), and *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083 (3d Cir. 1975) (CDO Br. 52-53)—are inapposite, as they involved cases where named plaintiffs *had* standing but lost it due to a change in the law *after* the class was certified (and absent class members could reasonably rely on the class action protecting their rights).  Here, however, the District Court found plaintiffs "never had standing" as to MBS they never bought, *Walters*, 163 F.3d at 432-33, and thus that "no reasonable" class member could have relied on *Luther* to protect its interests.  *Putnam*, 860 F. Supp. 2d at 1070.

## IV. THE DISTRICT COURT APPROPRIATELY EXERCISED ITS DISCRETION IN REJECTING OBJECTORS' CHALLENGE TO THE SETTLEMENT RELEASE.

The FNBR Objectors contend that the Settlement inappropriately releases non-parties not named in the class actions being settled, in particular MBS rating agencies and the trustee for the trusts that issued the securities at issue here. FNBR Br. 10-14. This objection is specious, and the District Court appropriately exercised its broad discretion in approving the release.[29]

"The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action." *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 748 (9th Cir. 2006). Moreover, "[a] class settlement may also release factually related claims against parties not named as defendants." *Id*.[30] "[T]he released claims need not be exactly factually

---

[29] The FNBR Objectors' assertion that the District Court did not consider their objections to the release is frivolous. FNBR Br. 10 n.1. At the final approval hearing, the District Court expressly referred to the release issue, noting that the *Knights of Columbus* case, which was and remains a focal point for the Objectors, *see* FNBR Br. 14-15, would not be affected by the proposed release because the plaintiff in that case had opted out of the Settlement. RE219-RE220. And the District Court then noted in its final approval order that it had "'carefully considered and rejected *each* of the objectors' arguments ... as ultimately lacking a basis in fact and law.'" ER43. This Court does not require a district court to respond at length to each objection in approving a class action settlement. *See, e.g.*, *Torrisi*, 8 F.3d at 1378-79.

[30] Although the Ninth Circuit to date has applied the identical factual predicate

and legally identical to the allegations in the complaint; rather, they need only

share a common factual predicate." *Anderson*, 2010 WL 8591002, at *6. Absent a

rule allowing for the release of non-parties, a settling defendant "would be exposed

to the same risks it had settled to avoid, through indemnification demands from

third parties sued by class members seeking to impose liability arising from the

same events and facts." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005,

1016 (9th Cir. 2012).

## A.     **Potential Claims Against Ratings Agencies Are Properly Released.**

The Settlement's definition of "Released Parties" includes MBS rating

agencies in part to protect the settling defendants from claims for contribution (or

based on other theories) in the event claims against rating agencies are asserted

based on the same allegations brought here. This aspect of the release is entirely

permissible (*see supra* at 52), and, indeed, many class action cases would not settle

if defendants were unable to limit potential future claims in this manner. *See

Skilstaf*, 669 F.3d at 1018 ("the retail pharmacies were intended third-party

beneficiaries of the settlement agreement to the extent necessary to protect [settling

---

doctrine to determine whether a release bars later-asserted claims, other circuits
have applied this doctrine to evaluate the fairness of a proposed class action
settlement release. *See Ricaldai v. US Investigations Servs.*, 2013 WL 4804733, *1
(C.D. Cal. Sept. 6, 2013) (citing *Anderson v. Nextel Retail Stores, LLC*, 2010 WL
8591002, *3 (C.D. Cal. April 12, 2010)).

defendant] from facing the same exposure through claims for indemnity that it had paid generously in settlement to avoid").

Any potential claims against the ratings agencies would necessarily be based on the same underlying factual predicate as Plaintiffs' claims against Countrywide —namely, that Countrywide allegedly concealed from investors the true credit characteristics of the mortgages backing the MBS they bought, and the rating agencies either were complicit or otherwise failed to undertake proper diligence and utilize appropriate processes to ferret out these alleged misstatements. *See, e.g.*, RE107-RE126. Indeed, the *Maine State* complaint referenced by the FNBR Objectors specifically alleges that the ratings agencies assigned inaccurate ratings to the MBS certificates due to Countrywide's alleged misrepresentations. *See, e.g.*, RE78 (Third Amended Class Action Complaint ¶ 94) (alleging ratings were inflated "due to incorrect information provided by Countrywide"). As a result, the Settlement properly releases any potential claims against Countrywide that might be asserted by the ratings agencies.

The FNBR Objectors point to an action pending in Illinois federal court, *First National Bank of Rochelle v. The McGraw Hill Cos.*, No. 13-5693 (N.D. Ill. filed Aug. 9, 2013) ("FNBR Illinois Action"), as an example of the sort of claims they say should not be released. FNBR Br. 11-12. But this argument ignores Ninth Circuit precedent holding that a settlement may release "factually related

-54-

claims against parties not named as defendants." *Reyn's*, 442 F.3d at 748.

Moreover, as the FNBR Objectors acknowledge, members of the sophisticated

proposed class of institutional investors and community banks in the FNBR Illinois

Action could have opted out of the Settlement. FNBR Br. 12. And only two of the

ten MBS certificates at issue in that case were issued by a Countrywide affiliate,

and thus the vast majority of claims in that action will not be released here. *See*

*First Nat'l Bank of Rochelle*, No. 13-5693, Dkt. No. 1-2 at 13-15.[31]

    The FNBR Objectors' argument that the ratings agencies cannot be released

because they paid nothing into the Settlement also lacks any merit. FNBR Br. 11.

There is no authority for the proposition that a party must contribute to a settlement

in order for the settlement to release claims against it, and the FNBR Objectors cite

none. *See McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d

928, 950 (N.D. Cal. 2012) ("Plaintiffs cite to no authority for the proposition that

Defendants must contribute to the settlement in order for the settlement to release

them, and the Court finds no such rule.").

---

[31] The FNBR Objectors also mention two other actions they say "***may be*** adversely affected" by the Settlement release. FNBR Br. 12 n.4. But those plaintiffs too could have opted out of the Settlement, and the FNBR Objectors nowhere dispute that. In any event, those claims appropriately were released, as the purpose of settling these class claims was to achieve global peace.

**B.**    <u>**The Settlement Properly Releases Claims Against Trustees.**</u>

Objectors also complain that potential claims against trustees are being

released (including against BNYM, the trustee for the 429 MBS trusts at issue in

the Settlement). FNBR Br. 13. This argument, however, lacks merit for the same

reason that Objectors' argument fails as to the rating agencies. It is entirely

appropriate for Countrywide to protect itself through this release from potential

future claims from trustees for contribution (or based on other theories) that could

be triggered absent a release of Class claims against them relating to Countrywide

MBS. *See Skilstaf*, 669 F.3d at 1016. In addition, Objectors ignore the fact that

the Settlement Agreement explicitly ***excludes*** from the release the Class' right to

participate in the $8.5 billion BNYM Settlement. *See supra* at 30-31. That

settlement resolves alleged breaches of representations and warranties regarding

the origination of the loans backing 530 Countrywide MBS trusts, most of which

are the same trusts at issue in the Settlement before this Court. Thus, in addition to

receiving their share of the one-half-billion-dollar Settlement before this Court,

Class Members that continue to hold their MBS certificates also will benefit from

the $8.5 billion BNYM Settlement when it is distributed to the trusts involved in

that settlement. *See supra* at 32.[32] This Settlement does not release that right.

---

[32] The FNBR Objectors also cite an article concerning the IRS' investigation into whether MBS trustees caused trusts to lose their REMIC status. *Id*. at 15 & n.6. This article is from April 2011, and Objectors nowhere suggest that the REMIC

In sum, the District Court properly approved the definition of "Released Parties."

## **CONCLUSION**

For the above-stated reasons, the District Court's order should be affirmed.

Respectfully submitted,

s/ Brian Pastuszenski

Brian E. Pastuszenski
Alexis L. Shapiro
Brian C. Devine
GOODWIN PROCTER LLP
53 State St.
Boston, MA  02109
(617) 570-1000

William M. Jay
GOODWIN PROCTER LLP
901 New York Ave., NW
Washington, D.C.  20001
(202) 346-4000

*Attorneys for Appellees Countrywide Financial Corp., Countrywide Home Loans, Inc., Countrywide Capital Markets LLC, Countrywide Securities Corp., CWALT, Inc., CWMBS, Inc., CWABS, Inc., and CWHEQ, Inc.*

Dated:      August 25, 2014

---

status of any trust has been challenged, much less lost, and in any event this article appeared years before the opt-out deadline in this Settlement.  Any Class Member concerned about the release of any such speculative tax-related claims against trustees could have opted out.  *See id*. at n.6.

## <u>STATEMENT WITH RESPECT TO ORAL ARGUMENT</u>

The Countrywide Defendants-Appellees respectfully request oral argument in this matter.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. Civ. P. 32(a)(7)(C), I certify that the attached brief is proportionately spaced, has a typeface of 14 points or more, and contains 13,973 words according to the Word Count function of Microsoft Word 2010.

Dated:  August 25, 2014                    <u>s/ Brian E. Pastuszenski</u>

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Countrywide Defendants-Appellees state that only the following seven cases, all of which have been consolidated under Lead Case Number 14-55093, are related:

- *Maine State Retirement System, et al. v. Countrywide Financial Corporation, et al.*, No. 14-55093 (9th Cir.);

- *Western Conference of Teamsters Pension Trust Fund v. Countrywide Financial Corporation, et al.*, No. 14-55120 (9th Cir.);

- *David H. Luther, et al. v. Countrywide Financial Corporation, et al.*, No. 14-55121 (9th Cir.);

- *Western Conference of Teamsters Pension Trust Fund v. Countrywide Financial Corporation, et al.*, No. 14-55122 (9th Cir.);

- *David H. Luther, et al. v. Countrywide Financial Corporation, et al.*, No. 14-55125 (9th Cir.);

- *Maine State Retirement System, et al. v. Countrywide Financial Corporation, et al.*, No. 14-55128 (9th Cir.); and

- *Maine State Retirement System, et al.* v *. Countrywide Financial Corporation, et al.*, No. 14-55140 (9th Cir.).

The CDO Objectors contend that these consolidated appeals are also related to the following eight cases because these eight cases "'raise the same or closely related issues' about standing and tolling" that they argue are raised in this appeal:

- *Federal Deposit Insurance Corporation as receiver for Strategic Capital Bank v. Countrywide Financial Corporation*, No. 12-57299 (9th Cir.);

- *Western & Southern Life Insurance v. Countrywide Financial Corporation*, No. 12-57303 (9th Cir.);

- *Federal Deposit Insurance Corporation as receiver for Security Savings Bank v. Countrywide Financial Corporation*, No. 13-56613 (9th Cir.);

- *Federal Deposit Insurance Corporation as receiver for Guaranty Bank v. Countrywide Securities Corporation*, No. 13-56675 (9th Cir.);

- *Federal Deposit Insurance Corporation as receiver for Strategic Capital Bank v. J.P. Morgan Securities LLC*, No. 13-56781 (9th Cir.);

- *Federal Deposit Insurance Corporation as receiver for Colonial Bank v. Countrywide Securities Corporation*, No. 13-56783 (9th Cir.);

- *American Fidelity Assurance Company v. Countrywide Financial Corporation*, No. 14-55002 (9th Cir.); and

- *The Prudential Life Insurance Company v. Countrywide Financial Corporation*, No. 14-55660 (9th Cir.).

For the reasons explained in Countrywide Defendants-Appellees' brief, these issues are not before this Court because the correctness of the District Court's standing and tolling rulings is not at issue in this appeal. Because these eight cases do not raise issues that are the same as, or closely related to, the issues that are actually raised by this appeal, and because they do not meet any other criterion identified by Ninth Circuit Rule 28-2.6, they are not related to this appeal.

# COUNTRYWIDE DEFENDANTS-APPELLEES' ADDENDUM

*Except for the following, all applicable statutes, regulations, and rules are contained in the addendum of Appellants*:

## TABLE OF CONTENTS

**STATUTES**                                                                 **PAGE**

**Securities Act Of 1933 § 12**

15 U.S.C. § 77*l* ...................................................................................CDA001

**Securities Act Of 1933 § 27**

15 U.S.C. § 77z-1(a)...........................................................................CDA002

**REGULATIONS**

17 C.F.R. § 229.512...........................................................................CDA008

**RULES**

Fed. R. Civ. P. 23 ..............................................................................CDA018

**OTHER**

"Opt Out" Actions Filed Before Approval of Settlement That Involve One Or More Of The 429 Offerings Settled ........................................................CDA024

"Opt Out" Actions Filed Or Prosecuted By Grais & Ellsworth LLP, Counsel for the CDO Objectors ...........................................................................CDA029

**Securities Act Of 1933 § 12**
**15 U.S.C. § 77*l*.  Civil liabilities arising in connection with prospectuses and communications**

(a) In general

Any person who--

   **(1)** offers or sells a security in violation of section 77e of this title, or

   **(2)** offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable, subject to subsection (b) of this section, to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

(b) Loss causation

In an action described in subsection (a)(2) of this section, if the person who offered or sold such security proves that any portion or all of the amount recoverable under subsection (a)(2) of this section represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communication, with respect to which the liability of that person is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statement not misleading, then such portion or amount, as the case may be, shall not be recoverable.

**Securities Act Of 1933 § 27**
**15 U.S.C. § 77z-1(a)**

**(a) Private class actions**

**(1) In general**

The provisions of this subsection shall apply to each private action arising under this subchapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.

**(2) Certification filed with complaint**

**(A) In general**

Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that—

**(i)** states that the plaintiff has reviewed the complaint and authorized its filing;

**(ii)** states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this subchapter;

**(iii)** states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

**(iv)** sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;

**(v)** identifies any other action under this subchapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve, or served, as a representative party on behalf of a class; and

**(vi)** states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

**(B) Nonwaiver of attorney-client privilege**

The certification filed pursuant to subparagraph (A) shall not be construed to be a waiver of the attorney-client privilege.

**(3) Appointment of lead plaintiff**

**(A) Early notice to class members**

**(i)** In general Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

**(I)** of the pendency of the action, the claims asserted therein, and the purported class period; and

**(II)** that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

**(ii)** Multiple actions If more than one action on behalf of a class asserting substantially the same claim or claims arising under this subchapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i).

**(iii)** Additional notices may be required under Federal rules Notice required under clause (i) shall be in addition to any notice required pursuant to the Federal Rules of Civil Procedure.

**(B) Appointment of lead plaintiff**

**(i)** In general Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

**(ii)** Consolidated actions If more than one action on behalf of a class asserting substantially the same claim or claims arising under this subchapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this subparagraph.

**(iii)** Rebuttable presumption

**(I)** In general Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this subchapter is the person or group of persons that—

**(aa)** has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

**(bb)** in the determination of the court, has the largest financial interest in the relief sought by the class; and

**(cc)** otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

**(II)** Rebuttal evidence The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—

**(aa)** will not fairly and adequately protect the interests of the class; or

**(bb)** is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

**(iv)** Discovery For purposes of this subparagraph, discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

**(v)** Selection of lead counsel The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.

**(vi)** Restrictions on professional plaintiffs Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

## (4) Recovery by plaintiffs

The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class.

## (5) Restrictions on settlements under seal

The terms and provisions of any settlement agreement of a class action shall not be filed under seal, except that on motion of any party to the settlement, the court may order filing under seal for those portions of a settlement agreement as to which good cause is shown for such filing under seal. For purposes of this paragraph, good cause shall exist only if publication of a term or provision of a settlement agreement would cause direct and substantial harm to any party.

## (6) Restrictions on payment of attorneys' fees and expenses

Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.

## (7) Disclosure of settlement terms to class members

Any proposed or final settlement agreement that is published or otherwise disseminated to the class shall include each of the following statements, along with a cover page summarizing the information contained in such statements:

## (A) Statement of plaintiff recovery

The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis.

**(B) Statement of potential outcome of case**

**(i)** Agreement on amount of damages If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this subchapter, a statement concerning the average amount of such potential damages per share.

**(ii)** Disagreement on amount of damages If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this subchapter, a statement from each settling party concerning the issue or issues on which the parties disagree.

**(iii)** Inadmissibility for certain purposes A statement made in accordance with clause (i) or (ii) concerning the amount of damages shall not be admissible in any Federal or State judicial action or administrative proceeding, other than an action or proceeding arising out of such statement.

**(C) Statement of attorneys' fees or costs sought**

If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought.

**(D) Identification of lawyers' representatives**

The name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class.

**(E) Reasons for settlement**

A brief statement explaining the reasons why the parties are proposing the settlement.

**(F) Other information**

Such other information as may be required by the court.

**(8) Attorney conflict of interest**

If a plaintiff class is represented by an attorney who directly owns or otherwise has a beneficial interest in the securities that are the subject of the litigation, the court shall make a determination of whether such ownership or other interest constitutes a conflict of interest sufficient to disqualify the attorney from representing the plaintiff class.

## 17 C.F.R. § 229.512 (Item 512) Undertakings.

Include each of the following undertakings that is applicable to the offering being registered.

(a) Rule 415 Offering. [FN1] Include the following if the securities are registered pursuant to Rule 415 under the Securities Act (§ 230.415 of this chapter):

> [1] Paragraph (a) reflects proposals made in Securities Act Release No. 6334 (Aug. 6, 1981).

The undersigned registrant hereby undertakes:

(1) To file, during any period in which offers or sales are being made, a post-effective amendment to this registration statement:

(i) To include any prospectus required by section 10(a)(3) of the Securities Act of 1933;

(ii) To reflect in the prospectus any facts or events arising after the effective date of the registration statement (or the most recent post-effective amendment thereof) which, individually or in the aggregate, represent a fundamental change in the information set forth in the registration statement. Notwithstanding the foregoing, any increase or decrease in volume of securities offered (if the total dollar value of securities offered would not exceed that which was registered) and any deviation from the low or high end of the estimated maximum offering range may be reflected in the form of prospectus filed with the Commission pursuant to Rule 424(b) (§ 230.424(b) of this chapter) if, in the aggregate, the changes in volume and price represent no more than 20% change in the maximum aggregate offering price set forth in the "Calculation of Registration Fee" table in the effective registration statement.

(iii) To include any material information with respect to the plan of distribution not previously disclosed in the registration statement or any material change to such information in the registration statement;

*Provided, however*, That:

CDA008

(A) Paragraphs (a)(1)(i) and (a)(1)(ii) of this section do not apply if the registration statement is on Form S–8 (§ 239.16b of this chapter), and the information required to be included in a post-effective amendment by those paragraphs is contained in reports filed with or furnished to the Commission by the registrant pursuant to section 13 or section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m or 78o(d)) that are incorporated by reference in the registration statement; and

(B) Paragraphs (a)(1)(i), (a)(1)(ii) and (a)(1)(iii) of this section do not apply if the registration statement is on Form S–3 (§ 239.13 of this chapter) or Form F–3 (§ 239.33 of this chapter) and the information required to be included in a post-effective amendment by those paragraphs is contained in reports filed with or furnished to the Commission by the registrant pursuant to section 13 or section 15(d) of the Securities Exchange Act of 1934 that are incorporated by reference in the registration statement, or is contained in a form of prospectus filed pursuant to Rule 424(b) (§ 230.424(b) of this chapter) that is part of the registration statement.

(C) *Provided further, however,* that paragraphs (a)(1)(i) and (a)(1)(ii) do not apply if the registration statement is for an offering of asset-backed securities on Form S–1 (§ 239.11 of this chapter) or Form S–3 (§ 239.13 of this chapter), and the information required to be included in a post-effective amendment is provided pursuant to Item 1100(c) of Regulation AB (§ 229.1100(c)).

(2) That, for the purpose of determining any liability under the Securities Act of 1933, each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(3) To remove from registration by means of a post-effective amendment any of the securities being registered which remain unsold at the termination of the offering.

(4) If the registrant is a foreign private issuer, to file a post-effective amendment to the registration statement to include any financial statements required by "Item 8.A. of Form 20–F (17 CFR 249.220f)" at the start of any delayed offering or throughout a continuous offering. Financial statements and information otherwise required by Section 10(a)(3) of the Act need not be

furnished, provided that the registrant includes in the prospectus, by means of a post-effective amendment, financial statements required pursuant to this paragraph (a)(4) and other information necessary to ensure that all other information in the prospectus is at least as current as the date of those financial statements. Notwithstanding the foregoing, with respect to registration statements on Form F–3 (§ 239.33 of this chapter), a post-effective amendment need not be filed to include financial statements and information required by Section 10(a)(3) of the Act or § 210.3–19 of this chapter if such financial statements and information are contained in periodic reports filed with or furnished to the Commission by the registrant pursuant to section 13 or section 15(d) of the Securities Exchange Act of 1934 that are incorporated by reference in the Form F–3.

(5) That, for the purpose of determining liability under the Securities Act of 1933 to any purchaser:

(i) If the registrant is relying on Rule 430B (§ 230.430B of this chapter):

(A) Each prospectus filed by the registrant pursuant to Rule 424(b)(3) (§ 230.424(b)(3) of this chapter) shall be deemed to be part of the registration statement as of the date the filed prospectus was deemed part of and included in the registration statement; and

(B) Each prospectus required to be filed pursuant to Rule 424(b)(2), (b)(5), or (b)(7) (§ 230.424(b)(2), (b)(5), or (b)(7) of this chapter) as part of a registration statement in reliance on Rule 430B relating to an offering made pursuant to Rule 415(a)(1)(i), (vii), or (x) (§ 230.415(a)(1)(i), (vii), or (x) of this chapter) for the purpose of providing the information required by section 10(a) of the Securities Act of 1933 shall be deemed to be part of and included in the registration statement as of the earlier of the date such form of prospectus is first used after effectiveness or the date of the first contract of sale of securities in the offering described in the prospectus. As provided in Rule 430B, for liability purposes of the issuer and any person that is at that date an underwriter, such date shall be deemed to be a new effective date of the registration statement relating to the securities in the registration statement to which that prospectus relates, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof. *Provided, however*, that no statement made in a registration statement or prospectus that is part of the registration statement or made in a document incorporated or deemed incorporated by reference into the registration

statement or prospectus that is part of the registration statement will, as to a purchaser with a time of contract of sale prior to such effective date, supersede or modify any statement that was made in the registration statement or prospectus that was part of the registration statement or made in any such document immediately prior to such effective date; or

(ii) If the registrant is subject to Rule 430C (§ 230.430C of this chapter), each prospectus filed pursuant to Rule 424(b) as part of a registration statement relating to an offering, other than registration statements relying on Rule 430B or other than prospectuses filed in reliance on Rule 430A (§ 230.430A of this chapter), shall be deemed to be part of and included in the registration statement as of the date it is first used after effectiveness. *Provided, however*, that no statement made in a registration statement or prospectus that is part of the registration statement or made in a document incorporated or deemed incorporated by reference into the registration statement or prospectus that is part of the registration statement will, as to a purchaser with a time of contract of sale prior to such first use, supersede or modify any statement that was made in the registration statement or prospectus that was part of the registration statement or made in any such document immediately prior to such date of first use.

(6) That, for the purpose of determining liability of the registrant under the Securities Act of 1933 to any purchaser in the initial distribution of the securities:

The undersigned registrant undertakes that in a primary offering of securities of the undersigned registrant pursuant to this registration statement, regardless of the underwriting method used to sell the securities to the purchaser, if the securities are offered or sold to such purchaser by means of any of the following communications, the undersigned registrant will be a seller to the purchaser and will be considered to offer or sell such securities to such purchaser:

(i) Any preliminary prospectus or prospectus of the undersigned registrant relating to the offering required to be filed pursuant to Rule 424 (§ 230.424 of this chapter);

(ii) Any free writing prospectus relating to the offering prepared by or on behalf of the undersigned registrant or used or referred to by the undersigned registrant;

(iii) The portion of any other free writing prospectus relating to the offering containing material information about the undersigned registrant or its securities provided by or on behalf of the undersigned registrant; and

(iv) Any other communication that is an offer in the offering made by the undersigned registrant to the purchaser.

(b) Filings incorporating subsequent Exchange Act documents by reference. Include the following if the registration statement incorporates by reference any Exchange Act document filed subsequent to the effective date of the registration statement:

The undersigned registrant hereby undertakes that, for purposes of determining any liability under the Securities Act of 1933, each filing of the registrant's annual report pursuant to section 13(a) or section 15(d) of the Securities Exchange Act of 1934 (and, where applicable, each filing of an employee benefit plan's annual report pursuant to section 15(d) of the Securities Exchange Act of 1934) that is incorporated by reference in the registration statement shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(c) Warrants and rights offerings. Include the following, with appropriate modifications to suit the particular case, if the securities to be registered are to be offered to existing security holders pursuant to warrants or rights and any securities not taken by security holders are to be reoffered to the public:

The undersigned registrant hereby undertakes to supplement the prospectus, after the expiration of the subscription period, to set forth the results of the subscription offer, the transactions by the underwriters during the subscription period, the amount of unsubscribed securities to be purchased by the underwriters, and the terms of any subsequent reoffering thereof. If any public offering by the underwriters is to be made on terms differing from those set forth on the cover page of the prospectus, a post-effective amendment will be filed to set forth the terms of such offering.

(d) Competitive bids. Include the following, with appropriate modifications to suit the particular case, if the securities to be registered are to be offered at competitive bidding:

The undersigned registrant hereby undertakes (1) to use its best efforts to distribute prior to the opening of bids, to prospective bidders, underwriters, and dealers, a reasonable number of copies of a prospectus which at that time meets the requirements of section 10(a) of the Act, and relating to the securities offered at competitive bidding, as contained in the registration statement, together with any supplements thereto, and (2) to file an amendment to the registration statement reflecting the results of bidding, the terms of the reoffering and related matters to the extent required by the applicable form, not later than the first use, authorized by the issuer after the opening of bids, of a prospectus relating to the securities offered at competitive bidding, unless no further public offering of such securities by the issuer and no reoffering of such securities by the purchasers is proposed to be made.

(e) Incorporated annual and quarterly reports. Include the following if the registration statement specifically incorporates by reference (other than by indirect incorporation by reference through a Form 10–K (§ 249.310 of this chapter) report) in the prospectus all or any part of the annual report to security holders meeting the requirements of Rule 14a–3 or Rule 14c–3 under the Exchange Act (§ 240.14a–3 or § 240.14c–3 of this chapter):

The undersigned registrant hereby undertakes to deliver or cause to be delivered with the prospectus, to each person to whom the prospectus is sent or given, the latest annual report to security holders that is incorporated by reference in the prospectus and furnished pursuant to and meeting the requirements of Rule 14a–3 or Rule 14c–3 under the Securities Exchange Act of 1934; and, where interim financial information required to be presented by Article 3 of Regulation S–X are not set forth in the prospectus, to deliver, or cause to be delivered to each person to whom the prospectus is sent or given, the latest quarterly report that is specifically incorporated by reference in the prospectus to provide such interim financial information.

(f) Equity offerings of nonreporting registrants. Include the following if equity securities of a registrant that prior to the offering had no obligation to file reports with the Commission pursuant to section 13(a) or 15(d) of the Exchange Act are being registered for sale in an underwritten offering:

The undersigned registrant hereby undertakes to provide to the underwriter at the closing specified in the underwriting agreements certificates in such denominations and registered in such names as required by the underwriter to permit prompt

delivery to each purchaser.

(g) Registration on Form S–4 or F–4 of securities offered for resale. Include the following if the securities are being registered on Form S–4 or F–4 (§ 239.25, or 34 of this chapter) in connection with a transaction specified in paragraph (a) of Rule 145 (§ 230.145 of this chapter).

(1) The undersigned registrant hereby undertakes as follows: That prior to any public reoffering of the securities registered hereunder through use of a prospectus which is a part of this registration statement, by any person or party who is deemed to be an underwriter within the meaning of Rule 145(c), the issuer undertakes that such reoffering prospectus will contain the information called for by the applicable registration form with respect to reofferings by persons who may be deemed underwriters, in addition to the information called for by the other Items of the applicable form.

(2) The registrant undertakes that every prospectus (i) that is filed pursuant to paragraph (h) (1) immediately preceding, or (ii) that purports to meet the requirements of section 10(a)(3) of the Act and is used in connection with an offering of securities subject to Rule 415 (§ 230.415 of this chapter), will be filed as a part of an amendment to the registration statement and will not be used until such amendment is effective, and that, for purposes of determining any liability under the Securities Act of 1933, each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(h) Request for acceleration of effective date or filing of registration statement becoming effective upon filing. Include the following if acceleration is requested of the effective date of the registration statement pursuant to Rule 461 under the Securities Act (§ 230.461 of this chapter), if a Form S–3 or Form F–3 will become effective upon filing with the Commission pursuant to Rule 462 (e) or (f) under the Securities Act (§ 230.462 (e) or (f) of this chapter), or if the registration statement is filed on Form S–8, and:

(1) Any provision or arrangement exists whereby the registrant may indemnify a director, officer or controlling person of the registrant against liabilities arising under the Securities Act, or

(2) The underwriting agreement contains a provision whereby the registrant

CDA014

indemnifies the underwriter or controlling persons of the underwriter against such liabilities and a director, officer or controlling person of the registrant is such an underwriter or controlling person thereof or a member of any firm which is such an underwriter, and

(3) The benefits of such indemnification are not waived by such persons:

Insofar as indemnification for liabilities arising under the Securities Act of 1933 may be permitted to directors, officers and controlling persons of the registrant pursuant to the foregoing provisions, or otherwise, the registrant has been advised that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Act and is, therefore, unenforceable. In the event that a claim for indemnification against such liabilities (other than the payment by the registrant of expenses incurred or paid by a director, officer or controlling person of the registrant in the successful defense of any action, suit or proceeding) is asserted by such director, officer or controlling person in connection with the securities being registered, the registrant will, unless in the opinion of its counsel the matter has been settled by controlling precedent, submit to a court of appropriate jurisdiction the question whether such indemnification by it is against public policy as expressed in the Act and will be governed by the final adjudication of such issue.

(i) Include the following in a registration statement permitted by Rule 430A under the Securities Act of 1933 (§ 230.430A of this chapter):

The undersigned registrant hereby undertakes that:

(1) For purposes of determining any liability under the Securities Act of 1933, the information omitted from the form of prospectus filed as part of this registration statement in reliance upon Rule 430A and contained in a form of prospectus filed by the registrant pursuant to Rule 424(b)(1) or (4) or 497(h) under the Securities Act shall be deemed to be part of this registration statement as of the time it was declared effective.

(2) For the purpose of determining any liability under the Securities Act of 1933, each post-effective amendment that contains a form of prospectus shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(j) Qualification of trust indentures under the Trust Indenture Act of 1939 for delayed offerings. Include the following if the registrant intends to rely on section 305(b)(2) of the Trust Indenture Act of 1939 for determining the eligibility of the trustee under indentures for securities to be issued, offered, or sold on a delayed basis by or on behalf of the registrant:

The undersigned registrant hereby undertakes to file an application for the purpose of determining the eligibility of the trustee to act under subsection (a) of section 310 of the Trust Indenture Act ("Act") in accordance with the rules and regulations prescribed by the Commission under section 305(b)(2) of the Act.

(k) Filings regarding asset-backed securities incorporating by reference subsequent Exchange Act documents by third parties. Include the following if the registration statement incorporates by reference any Exchange Act document filed subsequent to the effective date of the registration statement pursuant to Item 1100(c) of Regulation AB (§ 229.1100(c)):

The undersigned registrant hereby undertakes that, for purposes of determining any liability under the Securities Act of 1933, each filing of the annual report pursuant to section 13(a) or section 15(d) of the Securities Exchange Act of 1934 of a third party that is incorporated by reference in the registration statement in accordance with Item 1100(c)(1) of Regulation AB (17 CFR 229.1100(c)(1)) shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(l) Filings regarding asset-backed securities that provide certain information through an Internet Web site. Include the following if the registration statement is to provide information required by Item 1105 of Regulation AB (§ 229.1105) through an Internet Web site in accordance with Rule 312 of Regulation S–T (§ 232.312 of this chapter):

The undersigned registrant hereby undertakes that, except as otherwise provided by Item 1105 of Regulation AB (17 CFR 229.1105), information provided in response to that Item pursuant to Rule 312 of Regulation S–T (17 CFR 232.312) through the specified Internet address in the prospectus is deemed to be a part of the prospectus included in the registration statement. In addition, the undersigned registrant hereby undertakes to provide to any person without charge, upon request, a copy of the information provided in response to Item 1105 of Regulation AB pursuant to

Rule 312 of Regulation S–T through the specified Internet address as of the date of the prospectus included in the registration statement if a subsequent update or change is made to the information.

**Fed. R. Civ. P. 23.  Class Actions**

**(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

**(1)** the class is so numerous that joinder of all members is impracticable;

**(2)** there are questions of law or fact common to the class;

**(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

**(4)** the representative parties will fairly and adequately protect the interests of the class.

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

**(1)** prosecuting separate actions by or against individual class members would create a risk of:

**(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

**(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

**CDA018**

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

**(c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.**

**(1)** *Certification Order.*

**(A)** *Time to Issue.* At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

**(B)** *Defining the Class; Appointing Class Counsel.* An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

**(C)** *Altering or Amending the Order.* An order that grants or denies class certification may be altered or amended before final judgment.

**(2)** *Notice.*

**(A)** *For (b)(1) or (b)(2) Classes.* For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

**(B)** *For (b)(3) Classes.* For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

**(i)** the nature of the action;

**(ii)** the definition of the class certified;

**(iii)** the class claims, issues, or defenses;

**(iv)** that a class member may enter an appearance through an attorney if the member so desires;

**(v)** that the court will exclude from the class any member who requests exclusion;

**(vi)** the time and manner for requesting exclusion; and

**(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

**(3)** *Judgment.* Whether or not favorable to the class, the judgment in a class action must:

**(A)** for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and

**(B)** for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

**(4)** *Particular Issues.* When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

**(5)** *Subclasses.* When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.

**(d) Conducting the Action.**

**(1)** *In General.* In conducting an action under this rule, the court may issue orders that:

**(A)** determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

**(B)** require--to protect class members and fairly conduct the action--giving appropriate notice to some or all class members of:

**(i)** any step in the action;

**(ii)** the proposed extent of the judgment; or

**(iii)** the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;

**(C)** impose conditions on the representative parties or on intervenors;

**(D)** require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

**(E)** deal with similar procedural matters.

**(2)** *Combining and Amending Orders.* An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

**(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

**(1)** The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

**(2)** If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

**(3)** The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

**(4)** If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

**CDA021**

**(5)** Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

**(f) Appeals.** A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

**(g) Class Counsel.**

**(1)** *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

**(A)** must consider:

**(i)** the work counsel has done in identifying or investigating potential claims in the action;

**(ii)** counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

**(iii)** counsel's knowledge of the applicable law; and

**(iv)** the resources that counsel will commit to representing the class;

**(B)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

**(C)** may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

**(D)** may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

**(E)** may make further orders in connection with the appointment.

**(2)** *Standard for Appointing Class Counsel.* When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

**(3)** *Interim Counsel.* The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

**(4)** *Duty of Class Counsel.* Class counsel must fairly and adequately represent the interests of the class.

**(h) Attorney's Fees and Nontaxable Costs.** In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

**(1)** A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

**(2)** A class member, or a party from whom payment is sought, may object to the motion.

**(3)** The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

**(4)** The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D)

**"Opt Out" Actions Filed Before Approval of Settlement That Involve One Or More Of The 429 Offerings Settled**

| No. | Case Name |
|---|---|
| 1. | *American Int'l Group, Inc. v. Bank of America Corp.*, No. 2:11-cv-10549 (C.D. Cal.) |
| 2. | *Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-cv-05236 (C.D. Cal.) |
| 3. | *American Fidelity Assurance Co. v. Countrywide Fin. Corp.*, No. 2:11-cv-07167 (C.D. Cal.) |
| 4. | *Asset Mgmt. Fund, d/b/a AMF Funds v. Bank of America Corp.*, No. 2:12-cv-04775 (C.D. Cal.) |
| 5. | *Bank Hapoalim B.M. v. Bank of America Corp.*, No. 2:12-cv-04316 (C.D. Cal.) |
| 6. | *Bankers Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-cv-07152 (C.D. Cal.) |
| 7. | *Bayerische Landesbank, New York Branch v. Countrywide Fin. Corp.*, No.2:12-cv--05236 (C.D. Cal.) |
| 8. | *Cambridge Place Inv. Mgmt. Inc. v. Morgan Stanley & Co., Inc.*, No. 10-2741-BLS1 (Mass. Super. Ct.) |
| 9. | *The Charles Schwab Corp. v. BNP Paribas Sec. Corp.*, No. CGC-10-501610 (Cal. Super. Ct.) |
| 10. | *Deutsche Zentral-Genossenschaftsbank AG v. Bank of America Corp.*, No. 2:13-cv-01118 (C.D. Cal.) |
| 11. | *Dexia Holdings Inc. v. Countrywide Fin. Corp.*, No. 2:11-cv--07165 (C.D. Cal.) |
| 12. | *Federal Deposit Ins. Corp. As Receiver for Colonial Bank v. Countrywide Sec. Corp.*, No. 2:12-cv-08317 (C.D. Cal.) |

| No. | Case Name |
|-----|-----------|
| 13. | *Federal Deposit Ins. Corp., as Receiver for Colonial Bank v. Banc of America Funding Corp.*, No. 2:12-cv-00791 (M.D. Ala.) |
| 14. | *Federal Deposit Ins. Corp. As Receiver for Colonial Bank v. Countrywide Sec. Corp.*, No. 2:12-cv-06911 (C.D. Cal.) |
| 15. | *Federal Deposit Ins. Corp. As Receiver for Franklin Bank, S.S.B. v. Countrywide Sec. Corp.*, No. 2:12-cv-03279 (C.D. Cal.) |
| 16. | *Federal Deposit Ins. Corp. As Receiver For Guaranty Bank v. Countrywide Sec. Corp.*, No. 2:12-cv-08558 (C.D. Cal.) |
| 17. | *Federal Deposit Ins. Corp., As Receiver For Security Savings Bank v. Banc of America Sec. LLC*, No. 2:12-cv-06690 (C.D. Cal.) |
| 18. | *Federal Deposit Ins. Corp., As Receiver For Security Savings Bank v. Countrywide Fin. Corp.*, No. 2:12-cv-06692 (C.D. Cal.) |
| 19. | *Federal Deposit Ins. Corp., as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.*, No. 12-57299 (9th Cir.) |
| 20. | *Federal Deposit Ins. Corp. As Receiver for Strategic Capital Bank v. J.P. Morgan Sec. LLC*, No. 2:12-cv-08415 (C.D. Cal.) |
| 21. | *Federal Deposit Ins. Corp., as Receiver for United Western Bank, F.S.B. v. Countrywide Fin. Corp.*, No. 2:11-cv-10400 (C.D. Cal.) |
| 22. | *Federated Inv. Mgmt. Co. v. Countrywide Fin. Corp.*, BC465659 (Cal. Super. Ct.) |
| 23. | *Federal Housing Finance Agency, As Conservator For The Fed. Nat'l Mortgage Ass'n v. Countrywide Fin. Corp.*, No. 2:12-cv-01059 (C.D. Cal.) |
| 24. | *Federal Home Loan Bank of Atlanta v. Countrywide Fin. Corp.*, No. 11EV011779G (Ga. Super. Ct.) |

| No. | Case Name |
|-----|-----------|
| 25. | *Federal Home Loan Bank of Boston v. Ally Fin., Inc.*, No. 1:11-cv-10952 (D. Mass.) |
| 26. | *Federal Home Loan Bank of Chi. v. Banc of America Sec. LLC*, LC091499 (Cal. Super. Ct.) |
| 27. | *Federal Home Loan Bank of Chi. v. Bank of America Funding Corp.*, 10-CH-45003 (Il. Cir. Ct.) |
| 28. | *Federal Home Loan Bank of Ind. v. Banc of America Mortgage Sec., Inc.*, 49D05−1010−PL−045071 (Ind. Cnty. Ct.) |
| 29. | *Federal Home Loan Bank of Pittsburgh v. Countrywide Sec. Corp.*, No. GD-09-018482 (Pa. Com. Pleas) |
| 30. | *Federal Home Loan Bank of S. F. v. Credit Suisse Sec. (USA), LLC*, No. CGC-10-497840 (Cal. Super. Ct.) |
| 31. | *Federal Home Loan Bank of S.F. v. Deutsche Bank Sec., Inc.*, No. CGC-10-497839 (Cal. Super. Ct.) |
| 32. | *Federal Home Loan Bank of S. F. v. Bank of America Corp.*, No. CGC-10-505133 (Cal. Super. Ct.) |
| 33. | *Federal Home Loan Bank of Seattle v. Banc of America Sec.,LLC,* No. 09-2-46319-1 (Wash Super. Ct.) |
| 34. | *Federal Home Loan Bank of Seattle v. Countrywide Sec. Corp.*, No. 09-2-46321-2 (Wash. Super. Ct.) |
| 35. | *Federal Home Loan Bank of Seattle v. UBS Sec.*, No. 09-2-46350-6 (Wash. Super. Ct.) |
| 36. | *Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, No. 10-4244 (2d Cir.) |
| 37. | *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, No. 11-1158 (2d Cir.) |
| 38. | *Grand Bank of Texas v. Stiff*, No. 11-04755 (Tex. Dist. Ct.) |
| 39. | *HSH Nordbank AG v. Bank of America Corp.*, No. 2:13-cv- |

| No. | Case Name |
|-----|-----------|
| | 01116 (C.D. Cal.) |
| 40. | *IKB Int'l S.A. In Liquidation v. Bank of America Corp.*, No. 2:12-cv-06151 (C.D. Cal.) |
| 41. | *Landesbank Baden-Württemberg v. Countrywide Fin. Corp.*, No. 2:12-cv--04353 (C.D. Cal.) |
| 42. | *Massachusetts Mut. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-cv-10414 (C.D. Cal.) |
| 43. | *Massachusetts Life Ins. Co. v.  Mozilo*, No. BC482950 (Cal. Super. Ct.) |
| 44. | *Minnesota Life Ins. Co.  v. Countrywide Fin. Corp.,* No. 2:12-cv-06149 (C.D. Cal.) |
| 45. | *National Integrity Life Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-cv-09889 (C.D. Cal.) |
| 46. | *New Mexico State Inv. Council v. Countrywide Fin. Corp.*, No. D-0101-CV-2008-02289 (N.M. Dist. Ct.) |
| 47. | *Nexbank, SSB v. BAC Home Loans Servicing, LP*, No. DC-10-01752 (Tex. Dist. Ct.) |
| 48. | *Phoenix Light SF Ltd.  v. Bank of America Corp.*, No. 2:13-cv-03296 (C.D. Cal.) |
| 49. | *Phoenix Light SF Ltd.  v. Bank of America Corp.*, No. 2:13-cv-03299 (C.D. Cal.) |
| 50. | *Principal Life Ins. Co. v. Bank of America Corp.*, No. 2:12-cv-04317 (C.D. Cal.) |
| 51. | *The Prudential Life Ins. Co., Ltd. v. Countrywide Fin. Corp.*, 2:13-cv-01992 (D.N.J.) |
| 52. | *Putnam Bank v. Countrywide Fin. Corp.*, No. 2:11-cv-04698 (C.D. Cal.) |

| No. | Case Name |
|-----|-----------|
| 53. | *Royal Park Invs. SA/NV v. Bank of America Corp.*, No. 2:13-cv-03294 (C.D. Cal.) |
| 54. | *Royal Park Invs. SA/NV v. Bank of America Corp.*, No. 2:13-cv-03295 (C.D. Cal.) |
| 55. | *Sealink Funding Ltd. v. Countrywide Fin. Corp.*, No. 2:11-cv-08896- (C.D. Cal.) |
| 56. | *Silver Elms CDO II Ltd.  v. Bank of America Corp.*, No. 2:13-cv-03300 (C.D. Cal.) |
| 57. | *Sterling Fed. Bank, F.S.B. v. Countrywide Fin. Corp.*, No. 2:11-cv-07163 (C.D. Cal.) |
| 58. | *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, No. 2:10-cv-07275-MRP-MAN (C.D. Cal.) |
| 59. | *Thrivent Fin. for Lutherans v. Countrywide Fin. Corp.*, No. 2:11-cv-07154- (C.D. Cal.) |
| 60. | *United Fin. Casualty Co. v. Countrywide Fin. Corp.*, No. 2:11-cv-04766-MRP-MAN (C.D. Cal.) |
| 61. | *Waterfall Eden Master Fund, Ltd. v. Countrywide Fin. Corp.* No. 2:11-cv--10406 (C.D. Cal.) |
| 62. | *The W. and S. Life Ins. Co. v. Countrywide Fin. Corp.*,  No. 2:11-cv-07166 (C.D. Cal.) |

**"Opt Out" Actions Filed Or Prosecuted By Grais & Ellsworth LLP, Counsel for the CDO Objectors**

| No. | Case Name |
|-----|-----------|
| 1. | *The Charles Schwab Corp. v. BNP Paribas Sec. Corp.*, No. CGC-10-501610 (Cal. Super. Ct.) |
| 2. | *FDIC as Receiver for Franklin Bank, S.S.B. v. Countrywide Sec. Corp.*, No. 12-3279 (C.D. Cal.) |
| 3. | *FDIC as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.*, No. 12-4354 (C.D. Cal.) |
| 4. | *FDIC as Receiver for Security Savings Bank v. Countrywide Fin. Corp.*, No. 12-6692 (C.D. Cal.) |
| 5. | *FDIC as Receiver for Colonial Bank v. Countrywide Sec. Corp.*, No. 12-6911 (C.D. Cal.) |
| 6. | *FDIC as Receiver for Colonial Bank v. Countrywide Sec. Corp.*, No. 12-8317 (C.D. Cal.) |
| 7. | *FDIC as Receiver for Guaranty Bank v. Countrywide Sec. Corp.*, No. 12-8558 (C.D. Cal.) |
| 8. | *FDIC as Receiver for United Western Bank, F.S.B. v. Countrywide Fin. Corp.*, No. 11-10400 (C.D. Cal.)[1] |
| 9. | *Federal Home Loan Bank of S. F. v. Credit Suisse Sec. (USA), LLC*, No. CGC-10-497840 (Cal. Super. Ct.) |
| 10. | *Federal Home Loan Bank of S.F. v. Deutsche Bank Sec., Inc.*, No. CGC-10-497839 (Cal. Super. Ct.) |

[1] This action was initially filed on behalf of the FDIC by another firm, but Grais & Ellsworth LLP subsequently appeared as counsel of record.

| 11. | *Federal Home Loan Bank of S. F. v. Bank of America Corp.*, No. CGC-10-505133 (Cal. Super. Ct.) |
|-----|---|
| 12. | *Federal Home Loan Bank of Seattle v. Banc of America Sec., LLC,* No. 09-2-46319-1 (Wash Super. Ct.) |
| 13. | *Federal Home Loan Bank of Seattle v. Countrywide Sec. Corp.*, No. 09-2-46321-2 (Wash. Super. Ct.) |
| 14. | *Federal Home Loan Bank of Seattle v. UBS Sec.*, No. 09-2-46350-6 (Wash. Super. Ct.) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **August 25, 2014**, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 25, 2014                    <u>s/ Brian E. Pastuszenski</u>